BLUMENTHAL & CO. (INC.) *v.* UNITED STATES (No. 2296).[1]

1. EVIDENCE, PRESUMPTION—MARKET VALUE.
    Proof that the price of merchandise on January 19 and 30, February 17, and March 11 and 20, 1920, was 135 francs raises a presumption that this was the price from March 20 to June 17, 1920.

2. EVIDENCE OF MARKET VALUE.
    Where goods were bought in a rapidly rising market, an appraisement based on the price of the merchandise for future delivery during the period when the entries were made can not be said to be unsupported by any evidence, even though no sales were made at the price quoted.

United States Court of Customs Appeals, April 21, 1924.

APPEAL from Board of United States General Appraisers, Abstract 45944.

[Affirmed.]

*Sharretts, Coe & Hillis* (*Edward P. Sharretts* of counsel) for appellant.
*William W. Hoppin,* Assistant Attorney General (*John A. Kemp,* special attorney, of counsel), for the United States.

[Oral argument February 14 and 15, 1924, by Mr. Sharretts and Mr. Hoppin.

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

SMITH, Judge, delivered the opinion of the court:

The importer's protest objected to the amount of duties assessed on Tussah silk and challenged the legality of the appraisement and reappraisements upon which the collector's liquidation was based.

The record discloses that some of the Tussah silk was shipped from Basle, Switzerland to the United States on March 22, April 1 and April 17, 1920; that the first consignment was purchased for 34 francs and the other two for 35 francs per kilo; that on arrival at destination all three consignments were entered at 44 francs per kilo, appraised at 135 francs and reappraised at 115 francs per kilo; that on April 29, Iay 4, May 15, May 20 and May 21, five additional shipments of the Tussah silk were made from Basle, which were purchased by the importer at 60 francs per kilo and entered at that value; that all five shipments were appraised at 135 francs per kilo, reappraised at 115 francs per kilo and re-reappraised at 135 francs per kilo; that on June 1, June 16, and June 17, 1920, three additional shipments were made which were purchased at 70 francs per kilo; and entered at 115 francs per kilo; that these three consignments were appraised at 135 francs per kilo, reappraised at 115 francs per kilo and re-reappraised at 135 francs per kilo.

The prices paid for the several shipments and their entered value produce the impression that between October 4, 1919 and June 17, 1920, the price of Tussah silk made such rapid advances as to render ascertainment of its market value on any particular date during that

---

[1] T. D. 40166.

period so difficult that appraisement at the statutory cost of production might possibly have been warranted. The appraising officers elected however to ascertain market value and the only question presented to us by this appeal is whether the market value finally determined in the reappraisement proceedings, is sustained by any evidence whatever.

The original appraisement and the re-reappraisements were based on price lists issued by the Societe Industrielle pour la Schappe, the seller of the Tussah silk, which quoted the following prices for the years 1919 and 1920; 40 francs from May 24 to June 1, 1919, with no deliveries until November 11, 1919; 50 francs from June 1, 1919, to August 4, 1919, with no sales at that price; 60 francs between August 4 and October 4, 1919, with no. deliveries at that price until April 29, 1920; 70 francs between October 4, 1919 and December 12, 1919, deliveries commencing at that price May 29, 1920; 115 francs between December 12, 1919, and January 19, 1920, with no evidence of any deliveries at that price, prior to June ·1, 1920; 135 francs between January 19, 1920 and February 17, 1920, with no evidence that any sales were made at that figure prior to the exportation of the goods here involved.

If the quoted price of 135 francs for the period from January 19, 1920, to February 17, 1920, was any evidence at all of the market value of the goods at the time of exportation that is to say, in March, April, May, and June, 1920, the final appraisements must be sustained. We think the quoted price of 135 francs was some evidence of market value during the months last mentioned, first, because the price of Tussah silk in Switzerland was rapidly advancing and was the existing quoted price on the date of the exportation; second, because the seller as a business proposition would not fix a price which was not warranted by the law of supply and demand and which would consequently block the sale of his goods; third, because the selling agent of the Societe Industrielle pour la Schappe, testified that the price at which the goods were offered was the selling price for Tussah silk for future delivery. This witness was positive not only that the prices given on the list were the selling prices at which the firm was taking business for future delivery, but that the price at which the goods were eventually sold was not less than the asking price for future delivery; fourth, because the importer himself testified positively that he had no reason to believe that he could buy at a less price than 135 francs between January 19, 1920, and March 20, 1920, and that if he bought at all he had to pay the asking price; fifth, because 135 francs must be presumed to have continued to be the selling price from March 20 to June 17, 1920, in the absence of evidence establishing that during that period Tussah silk was either quoted or sold at a less rate.

As there was some evidence to support the final appraisement we can not say that it was arbitrary and we must hold that the market value is not subject to review.—United States *v.* Haviland & Co. (167 Fed. 414, 419). The judgment of the Board of General Appraisers sitting as a classification board must therefore be *affirmed.*