The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* MEXICAN PRODUCTS CO. (No. 4260) [1]

---

[1] C. A. D. 129.

United States Court of Customs and Patent Appeals, May 29, 1940

*Webster J. Oliver*, Assistant Attorney General (*Daniel I. Auster*, special attorney, of counsel), for the United States.
*Philip Stein* for appellee.

[Oral argument February 6, 1940, by Mr. Auster and Mr. Stein]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges [1]

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, in reappraisement 109437–A.

The merchandise involved consists of 215 crates of so-called "Mexican glassware." It was exported from Mexico on January 12, 1934, and entered at Laredo, Tex., March 21, 1934. It was invoiced, according to the particular size or type, at certain manufacturer's list prices, less a discount of 50 per centum. It was entered at the list prices, less a discount of 10 per centum, plus packing. It was appraised by the local appraiser at the entered list prices, less 5 per centum discount, plus packing.

---

[1] Jackson, Judge, took no part in the consideration or decision of this case

Both the collector and the importer appealed for reappraisement, the collector contending that the proper dutiable values of the merchandise were the manufacturer's list prices, without any discount, plus packing, and the importer contending that the dutiable values were the manufacturer's list prices, less 10 per centum discount, plus packing.

The trial court found from the evidence that "The usual wholesale quantities in which the merchandise was freely sold in the principal market of Mexico in the ordinary course of trade at and immediately prior to the date of shipment in this case [both for consumption in Mexico and for export to the United States] was 5 crates and upwards, the value of 5 crates of merchandise being about 100 pesos"; that the foreign values of the involved and like merchandise were higher than the export values, and were, therefore, the dutiable values; and that the foreign values were the entered values, that is, the manufacturer's list prices, less 10 per centum discount, plus packing, and judgment was entered accordingly.

On appeal by the Government, the appellate division of the Customs Court sustained the findings of the trial court, and, accordingly, affirmed its judgment. Whereupon, the Government appealed to this court and here contends that it has not been established by any evidence of record that merchandise like that here involved is freely offered for sale in the usual wholesale quantities and in the ordinary course of trade to all purchasers in the principal markets of Mexico, either for consumption in Mexico or for export to the United States, at the manufacturer's list prices, less a discount of 10 per centum; that the evidence of record clearly establishes that the only prices at which merchandise like that here involved was freely offered for sale to all purchasers, both for consumption in Mexico and for export to the United States, were the manufacturer's list prices, without any discount; that, therefore, the presumption of correctness attending the appraiser's appraisement at the manufacturer's list prices, less a discount of 5 per centum has been overcome; and that, considering the undisputed evidence of record, the dutiable values of the imported merchandise are the manufacturer's list prices, without any discount, plus packing.

It appears from the record that the involved merchandise was manufactured by Bernabe Tovar y Hno., Guadalajara, Mexico.

The record consists of the testimony of five witnesses (two of whom testified for the Government, and three for the importer—appellee), and certain documentary evidence.

Exhibit No. 1 consists of price lists issued by the Mexican manufacturer of the involved articles, together with a statement of the conditions under which the involved and like articles were sold by the

Mexican manufacturer. It appears therefrom, among other things, that all of the sales made by the manufacturer are cash sales.

Exhibit No. 2 is a letter, dated January 18, 1935, addressed by the American Vice Consul at Guadalajara, Mexico, to A. F. Scharff of the Bureau of Customs, San Antonio, Tex., having attached thereto an affidavit of Bernabe Tovar, one of the partners in the Mexican manufacturing concern.

Exhibit No. 3 is an official report, dated April 18, 1934, by Customs Agent A. F. Scharff. It relates to the foreign and export values of merchandise like that here involved and includes a list of sales of such merchandise, which sales were made by the Mexican manufacturer of the involved merchandise. Those sales, both for consumption in Mexico and for export to the United States, cover a period from July 1933 to February 1934.

Exhibit No. 4 is also a report by Customs Agent Scharff, dated January 29, 1935, relative to the foreign and export values of merchandise like that here involved. It also includes a list of sales of merchandise like that here involved made by the Mexican manufacturer, both for consumption in Mexico and for export to the United States. Those sales cover periods from March 7 (for consumption in Mexico) and May 3 (for export to the United States), 1933 to December 1934.

Two other exhibits were introduced in evidence, but as they are not material to the issues here involved, we deem it unnecessary to describe them.

In its decision, the appellate division of the Customs Court stated, among other things:

The facts are summarized and the sales made at and near the time of shipment, both for home consumption and for export, are stated in a full and complete report by the painstaking special agent upon full information freely given him by the shippers in Mexico.

The other evidence, in a rather cumbersome record, does not conflict with his statement of the applicable sales.

The Government claims that because of irregularity of the discounts allowed, therefore, all discounts should be disallowed and the *per se* list prices taken as the dutiable value of the merchandise. That contention is unsound because practically all the sales except a few in very small quantities allow some discount and it is reasonable to proceed, as the judge below did, properly considering only the sales at or shortly before the period of these shipments, to arrive at the findings above set forth. Most of the sales, including the sale to the importer allowed even larger discounts than the 10 per centum claimed by the importer.

Taking the sales as a whole it is reasonable to conclude as we do:

(1) that the home market value rather than the lower export value should be taken for the dutiable value.

(2) that the usual wholesale quantity in which the merchandise was freely offered to all purchasers in the Mexican market was 5 crates and upwards, the value of 5 crates being about 100 pesos.

(3) that the prices at which the merchandise was freely sold in wholesale quantities in the Mexican market for home consumption, no export value being

higher, are the unit prices of the invoices less 10 per centum discount plus cases and packing.

The appellate division of the Customs Court did not make a detailed statement of the evidence of record, but apparently intended to approve and adopt the trial court's statement with regard thereto. Accordingly, we quote *in extenso* from the trial court's decision:

Some of the sales reported in Exhibit 3 are not listed in Exhibit 4 and some of the sales reported in Exhibit 4 are not listed in Exhibit 3, and some sales are duplicated in the two reports. By combining the sales in the two reports and not considering the duplicates, I find that, from October 12, 1933, to January 12, 1934 (the date of exportation of the shipment here in question) the number of sales in Mexico, with the discount allowed, are as follows:

> 1 sale at 5% discount
> 3 sales at 10% discount
> 4 sales at 15% discount

The sales to the United States during the same period are as follows:

> 3 sales at net prices
> 4 sales at 5% discount
> 1 sale at 16% discount
> 5 sales at 20% discount
> 9 sales at 21% discount, or 20% and 1%.

Two of the three sales at net prices in the United States were in small amounts, namely at 53.01 pesos and 41.76 pesos. The testimony of Pedro Pinon shows that a shipment valued at 100 pesos contains five cases of merchandise, which is a wholesale transaction, and that a shipment valued at only 50 pesos would be a retail transaction. On the limitation shown by the testimony, therefore, only one of the shipments at net prices would cover a wholesale quantity.

All of the sales at discounts of 21 per centum were made to one firm, namely Henry S. Beach of El Paso, Tex., and the one sale at 16 per centum discount was made to the same firm. The latter sale covers a small shipment valued at 88.24 pesos. Pedro Pinon of that firm testified that each invoice constitutes an individual order and that small orders are given as replacements when they need a few pieces to fill out their stock.

No sales are shown in the customs agent's reports (Exhibits 3 and 4) for the date of shipment in this case—January 12, 1934. One sale for home consumption is reported as of January 13, 1934, at 10 per centum discount. This sale of January 13, 1934, is not included in the analysis above set forth.

In such a situation as is here involved, where sales have been made at different prices to various dealers, it has been held that the major portion of the sales in wholesale quantities should be adopted as a criterion. *Adolph Goldmark & Sons Corp.* v. *United States*, 22 C. C. P. A. 358, T. D. 47378; *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T. D. 42216; *G. W. Pleissner* v. *United States*, 16 Ct. Cust. Appls. 507, T. D. 43237; *United States* v. *M. Minkus*, 21 C. C. P. A. 382, T. D. 46912; *Jenkins Brothers* v. *United States*, 25 C. C. P. A. 90, T. D. 49093. *It is clear from an examination of the schedule of sales of glassware above set forth that the major portion of the sales for export were made at discounts of 20 per centum and 21 per centum whereas the highest discount allowed on merchandise sold for home consumption was 15 per centum. The foreign value of the merchandise is therefore higher than the export value, and, under the statutory limitation, the merchandise must be appraised at the foreign value.*

*The major portion of the sales in wholesale quantities for home consumption three months prior to the date of shipment in this case was at discounts of 15 per centum.* The major portion of the other sales in Mexico from March 7, 1933, to October 5, 1934, was also at discounts of 15 per centum, but on the statutory limitation and authorities cited those sales are too remote to have consideration given thereto. All the importers claim in this case, however, is that 10 per centum discount from the invoice prices should be allowed and the amended entry was made on the basis of that discount. The importer's contention, therefore, seems to be adequately sustained by the record.

\*          \*          \*          \*          \*          \*          \*

The price list introduced in evidence as Exhibit 1 is printed in the Spanish language. Various discounts are printed on Exhibit 1 in red ink at the bottom of the first page. What purports to be a translation of those discounts is contained on page 15 of Exhibit 4, as follows:

In April 1933 B. Tovar published the following statement:

To clients who consume $10,000 annually or more, 20%.
To clients who consume $5,000 annually or more, 10%.
To clients who consume $2,000 annually or more, 5%.
To clients who consume less, the prices are net.

The record shows that where discounts are allowed they are given on each individual purchase and not at the end of the year, and the statement of discounts on Exhibit 1 seems to refer either to clients who purchase the amounts stated in the previous year or who convince the manufacturer that they were entitled to the discounts they received. *The record shows that the discounts are given upon the purchaser's individual application to the manufacturer. At any rate, during the period immediately preceding the shipment of the merchandise in this case the record clearly shows that the major portions of the sales for home consumption in Mexico were made at discounts of 10 per centum or higher.*

The record also shows that another manufacturer in Guadalajara by the name of Avalos produced glassware similar to that manufactured by Tovar, although some dealers considered that Avalos' merchandise was inferior to that manufactured by Tovar. It was testified that Avalos allowed higher discounts than Tovar. The record is silent as to sales made by Avalos, however, and affords no basis upon which a finding can be made as to the value of similar merchandise. [Italics ours.]

## "Foreign" and "Export" values are defined in section 402 of the Tariff Act of 1930 as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers

and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

In its decision, the trial court considered sales made by the Mexican manufacturer during the three-month period preceding the exportation of the involved merchandise (January 12, 1934), but did not consider any sales made subsequent to that date.

It may be said in explanation that the trial court apparently was of the opinion that, in view of the language contained in section 402 (c) and (d), *supra*, evidence of sales of merchandise like that here involved, either prior to or subsequent to the date of exportation of the involved merchandise, was not competent to establish either export or foreign values of the involved merchandise *on the date of its exportation*.

The trial court stated in its decision that, in view of the decision of this court in the case of *United States* v. *A. S. Neuberger and American Glanzstoff Corp.*, 19 C. C. P. A. (Customs) 96, T. D. 45241, sales made subsequent to the date of exportation of the involved merchandise could not be considered, but that in view of the decision in the case of *Blumenthal & Co. (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 176, T. D. 40166, it was proper, in determining the values of the involved merchandise, to consider sales of merchandise like that here involved made by the foreign manufacturer during the three-month period preceding the dates of exportation of the imported merchandise.

In the case of *United States* v. *A. S. Neuberger and American Glanzstoff Corp.*, *supra*, it was held that, owing to the fact that market conditions in Germany for merchandise like that there involved "had been unstable for some time," a special agent's report made in April 1930, which did not "purport to cover any period of time prior" thereto, was not competent evidence of the foreign value of merchandise exported from Germany in the latter part of 1928.

In the case of *Blumenthal & Co. (Inc.)* v. *United States*, *supra*, it was held on the record there presented that the price at which merchandise like that there involved was freely offered for sale in Switzerland during the period from January 19 to March 20, 1920, was competent evidence of the value of the merchandise there involved which was exported from Switzerland during the period from March 20 to June 17, 1920.

It does not appear from the record that any sales were made by the Mexican manufacturer of merchandise like that here involved, either for consumption in Mexico or for export to the United States, on January 12, 1934, the date of the exportation of the involved merchandise.

As hereinbefore stated, the appellate division of the Customs Court and the trial court concurred in holding that the usual wholesale quantities of merchandise like that here involved were "5 crates and upwards, the value of 5 crates being about 100 pesos," and that quantities less than 5 crates, valued at less than 100 pesos, were retail quantities.

It is clear from the record in the instant case that, when considered in the light of the oral testimony, the Mexican manufacturer's sales of merchandise like that here involved (as reported in exhibits Nos. 3 and 4), during the period from March 7, 1933 to December 20, 1934, are indicative of the method employed by the manufacturer in the sale of such merchandise, both for consumption in Mexico and for export to the United States, on the date of the exportation of the involved merchandise (January 12, 1934); that is to say, considering the oral testimony together with the sales referred to, it is clear that the discounts allowed purchasers by the Mexican manufacturer, both for consumption in Mexico and for export to the United States, depended, as stated in substance in the trial court's decision, upon either the status of the purchaser or his bargaining ability.

There is no evidence of record that merchandise like that here involved was freely offered for sale or sold by the Mexican manufacturer to all purchasers, either for consumption in Mexico or for export to the United States, in the ordinary course of trade and in the usual wholesale quantities at the Mexican manufacturer's list prices, less discounts of either 5 per centum or 10 per centum. On the contrary, it appears not only from the oral testimony but also from the manufacturer's sales, hereinbefore referred to, that discounts ranging from 5 per centum to 21 per centum were allowed some purchasers from the list prices, regardless of the quantities purchased; whereas, other purchasers were required to pay the list prices, regardless of the amount purchased. For example, on October 5, 1933, E. Silveste of Tia Juana, Mexico, purchasing for consumption in Mexico, paid the list prices, without any discount, on a purchase amounting to 172.39 pesos, which purchase, according to the decisions of the courts below, was a usual wholesale quantity, and, on January 13, 1934, E. Strauss of Jaurez, Mexico, purchasing for consumption in Mexico, received a 10 per centum discount on a purchase amounting to 81.51 pesos, and on February 10, 1934, the same purchaser (Strauss), purchasing for consumption in Mexico, received a discount of 10 per centum on a purchase amounting to 47.83 pesos; whereas, on January 26, 1934, Carmen de Vina of Magdalena, Mexico, paid the list prices without any discount on a purchase amounting to 65.37 pesos. (It will be observed that the purchases made by Strauss, who received a discount of 10 per centum, and de Vina, according to the findings of the courts below, were in retail quantities.) There is also evidence of record that, during

the months of November and December 1933, other purchasers, *purchasing for consumption in Mexico* in quantities found by the courts below to be the usual wholesale quantities, paid the list prices, less discounts ranging from 5 per centum to 15 per centum.

It further appears from the record that sales of merchandise like that here involved were also made during the period from October 1933 to March 21, 1934, inclusive, *for export to the United States*, in quantities found by the trial court and the appellate division of the Customs Court to be the usual wholesale quantities at the following prices: Two at the list prices; seven at the list prices, less 5 per centum discount; six at the list prices, less 10 per centum discount; two at the list prices, less 15 per centum discount; twelve at the list prices, less a discount of 21 per centum; and five at the list prices, less a discount of 20 per centum. One of those purchasers, Jose Velarde of El Paso, Tex., purchasing in what has been held to be the usual wholesale quantities, received a discount from the list prices of 20 per centum on purchases made on November 18, December 9, 12, and 29, 1933, and on January 20, 1934, he received a 20 per centum discount on a purchase amounting to 37.43 pesos, a quantity held by the courts below to be a retail quantity.

The record also contains evidence that on January 26, 1934, the appellee, the Mexican Products Co., received a discount of 5 per centum from the list prices on a purchase made in what has been held to be a usual wholesale quantity; that during the same month, another purchaser received a discount of 5 per centum in one instance and 21 per centum in another on purchases made in the usual wholesale quantities; that on January 8, 1934, 4 days prior to the exportation of the involved merchandise, four purchases were made by apparently the same purchaser (Jesus Matute & Remus), *two in so-called retail quantities and two in so-called wholesale quantities,* at the list prices, without any discount; that on November 16 and 18 and December 6, 1933, Josephine Schaefer of San Antonio, Tex., who testified on behalf of the Government, made purchases in the usual wholesale quantities of goods like those here involved at the list prices, less discounts of 5 per centum; and that on January 24 and February 14, 1934, the same purchaser (Schaefer), purchasing in the *usual wholesale quantities,* was charged the list prices, less a discount of 10 per centum; and that on February 28 of that year the same purchaser purchased a *retail quantity at the list prices, less a discount of 10 per centum.*

It appears from the testimony of Josephine Schaefer that, at the request, by letter, of Miss Rabe (her former employer, who had been dealing with the Mexican manufacturer), she received a 5 per centum discount from the list prices on purchases made by her in November and December 1933; that the purchases made by her in January

and February 1934, hereinbefore referred to, were made by the witness personally from Mr. Tovar, one of the partners of the Mexican manufacturer; and that, although Mr. Tovar did not offer her any discount from the list prices, she demanded and received a discount of 10 per centum. We quote from her testimony relative to the 10 per centum discount received by her:

Q. How did you happen to get 10% at that time?—A. I had to ask for it, and tell them there were other places where I could also purchase things at 10%, and they agreed to give it to me then.

Q. Did Mr. Tovar offer to give you any discount at all?—A. No, sir.

Q. You bargained for this 10%, did you; is that correct?—A. Yes, sir.

The witness further testified that she and other purchasers received discounts by bargaining with the Mexican manufacturer, and that such discounts did not depend upon the quantities of merchandise purchased.

There is other testimony of record, including that of appellee's witnesses, from which it clearly appears that the prices paid for merchandise like that here involved for export to the United States depended upon the status—whether a wholesaler or retailer—and the bargaining ability of the purchaser.

It is apparent from the quoted excerpt from the trial court's decision that the court did not find from the evidence that merchandise like that here involved was freely offered for sale *to all purchasers*, either for consumption in Mexico or for export to the United States, at the list prices, less discounts of 10 per centum. It is also apparent that the trial court based its decision upon the fact that the "major portion of the sales," both for consumption in Mexico and for export to the United States, were made at the list prices, less a discount of 10 per centum or higher, and that as the major portion of the sales for export to the United States were made at discounts of 20 per centum and 21 per centum, which were higher than discounts allowed on goods sold for consumption in Mexico, the foreign value was higher than the export value and, accordingly, was the dutiable value of the merchandise.

It is true that it appears from the record that the *major portion of sales* of merchandise like that here involved, both for consumption in Mexico and for export to the United States, were at the manufacturer's list prices, less discounts varying from 5 per centum to 15 per centum on goods for consumption in Mexico and from 5 per centum to 21 per centum on goods sold for export to the United States. However, it clearly appears from the record that merchandise like that here involved was not freely offered for sale *to all purchasers* in the usual wholesale quantities and in the ordinary course of trade, either for consumption in Mexico or for export to the United States, at prices less than the manufacturer's list prices.

In determining foreign and export values, as defined in section 402 (c) and (d), respectively, it is proper to consider only the market values

or prices at which merchandise like or similar to that imported is freely offered for sale *to all purchasers* (not to the greater number, or to those of a particular class) in the principal markets of the country from which exported in the usual wholesale quantities and in the ordinary course of trade. See *United States* v. *A. W. Faber, Inc.*, 21 C. C. P. A. (Customs) 290, T. D. 46819; *Stone & Downer Co.* v. *United States*, 21 C. C. P. A. (Customs) 479, T. D. 46958; *United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308.

In the latter case, referring to the definition of "foreign value" in section 402 (c), *supra*, we said:

The expression "all purchasers" does not mean the members of some association only, or 99 per centum of the purchasers of such goods, or those who would not thereafter buy such goods from someone else, but it does mean all of those who cared to buy such goods in such markets.

As there is no evidence of record that merchandise like that here involved was sold or freely offered for sale to *all purchasers* in the usual wholesale quantities and in the ordinary course of trade in the principal market of Mexico, either for consumption in Mexico or for export to the United States, at prices less than the manufacturer's list prices, it should have been held that the proper dutiable values of the involved merchandise are the manufacturer's list prices, plus packing. Accordingly, we must hold that the findings of the trial court and the appellate division of the Customs Court that the dutiable values of the involved merchandise are the manufacturer's list prices, less a discount of 10 per centum, plus packing, are not supported by any substantial evidence.

The judgment of the appellate division of the United States Customs Court is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.