UNITED STATES *v.* A. F. STAUFF & CO. FOR A/C B. DICKSON & CO.

**No. 5949.**—Invoice dated Bradford, England, November 24, 1941.
Certified December 3, 1941.
Entered at New York, N. Y., January 3, 1942.
Entry No. 732135.

(Decided November 2, 1943)

*Paul P. Rao,* Assistant Attorney General (*Dorothy C. Bennett* and *Robert C. O'Grady,* special attorneys), for the plaintiff.
*Puckhafer, Rode & Rode* (*John D. Rode* of counsel) for the defendant.

COLE, Judge: This appeal for reappraisement, filed pursuant to the provisions of section 501 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1501) by the collector of customs at the port of New York, brings for determination the proper dutiable value of two kinds of crepe wool, quality S and quality O, exported from Bradford, England, on December 3, 1941, and entered at the port of New York on January 3, 1942.

Counsel for plaintiff stated, at the opening of the hearing, that "we have no question of foreign value in this case," and proceeded toward showing a dutiable export value for the goods in question. That theory of the case is not accepted by defendant. Counsel, in their brief, contend that "The Government (plaintiff) is under the burden of proving by competent, credible evidence either that there is no foreign value and that there is a freely offered export value or that there is a foreign value and that there is a higher freely offered export value."

Plaintiff's assumption that the court was not concerned with foreign value is based on the following statements which appear on the invoice in question:

*Crape O.* Home market value, taxes included, including compulsory war risks commodity insurance is in no case higher than invoice price less freight & charges of 8 cents per lb.
*Crape S.* is sold solely in the U. S. A. but if sold in the Home market, the value would be equivalent to 68 cents per lb. that is invoice price less 8 cents per lb. freight & charges.

While the original entry was made at the invoice values, a valid amendment thereto was submitted showing higher prices which were accepted by the appraiser. This development was evidently overlooked by the plaintiff. There is nothing in the record, either among the official papers forwarded by the collector or in the evidence adduced at the trial, to suggest what the prices used on appraisement represent.

The statute, section 501, *supra*, provides that "The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise." Unless the basis of the appraiser's finding is very definitely set forth, the court, sitting in reappraisement, cannot apply to such action the prominence that Congress manifestly intended.

I am unable to determine from the record the statutory value (section 402 of the Tariff Act of 1930, 19 U. S. C. 1940 ed. § 1402) adopted by the appraiser as representative of the values found by him, and therefore cannot accept as a matter of fact the contention, stressed by plaintiff, that there is "no question of foreign value in this case." Accordingly, the Government, as plaintiff in this appeal, assumes the burden hereinabove set forth and urged by defendant. I would be inclined to restore the case to the calendar to supply the omission, if the record before me did not fall far short of establishing a dutiable value within the statutory definition thereof in section 402, *supra*.

The only evidence was offered by plaintiff and consists of the testimony of one witness, an employee of a New York concern, the exclusive selling agent in this country of the foreign manufacturer of the merchandise in question. The witness stated she has been associated with the firm for 9 years, and that for the last 4 or 5 years she took charge of the business when the proprietor was away from New York. The testimony tends to show that the foreign manufacturer, on November 10, 1941, sold or offered to sell to customers in the United States, solicited by the selling agent here, the quality S crepe at 92 cents a pound and the quality O at $1.02 a pound. In support of oral statements to that effect, the witness offered two telegrams (collective exhibit 1), in rather vague language, which she identified as referring to the quality S material and explained as meaning that such merchandise was not to be sold in this country at lower than 92 cents per pound. Although no reference was made to the quality O, the witness stated there was a constant 10-cent differential between the two kinds so the inference to be drawn was that the quality O was to be offered and sold at not less than $1.02 per pound. The witness also produced a letter (exhibit 2) which, she stated, had been circularized among customers, approximately fifteen, located in the metropolitan area, Chicago, California, and Louisiana, and containing the information obtained from the English manufacturer in the telegrams referred to.

The said telegrams were received approximately 1 month prior to the date of shipment of the goods in question. In a market that remained stable for some definite period, sales and offers for sale within a reasonable time from the date of exportation might be

competent in determining dutiable value. *Blumenthal* v. *United States* (12 Ct. Cust. Appls. 176, T. D. 40166). But such was not the condition here. The witness testified, quoting prices, that for approximately 4 weeks immediately prior to the time when the telegrams were sent, the market for the commodities in question was a rising one. In the light of such testimony, it is a permissible conclusion that an entirely different value for such or similar merchandise, manufactured either for home consumption or for exportation to the United States, may have prevailed in the principal markets of England at the time of exportation of this material. In a changing market, such as the one reflected by the witness' testimony, the obligation rested with plaintiff to show a value on the date of exportation. If no actual sales were made at that time, bona fide offers for sale could have been shown. It is an established principle that where no sales have been made, offers for sale may properly form the basis for determining dutiable value. *Oceanic Trading Co.* v. *United States* (21 C. C. P. A. 146, T. D. 46478).

Another weakness in the testimony is its limited scope. It is confined solely to transactions between the foreign manufacturer and its United States selling agent. This defect becomes more pronounced in view of the admission by plaintiff that there were other manufacturers of like merchandise when the goods in question were shipped. The burden on the plaintiff (section 402, *supra*) in attempting to prove either foreign or export value is to establish a price "at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade." Statements, like those which constitute the record before me, by a representative of a United States selling agent, working for a commission based on sales consummated in this country, concerning only relations with a foreign principal, are not to be accepted as all-embracive to satisfy such requirements. The insufficiency of proof relating only to one manufacturer was expressed in *United States* v. *International Forwarding Co., Inc.*, 27 C. C. P. A. 21, C. A. D. 56, as follows:

Had it been shown that the business practice of the exporter was representative of the general business practices of other manufacturers in Germany with respect to sales of such or similar merchandise, we would hold that there was substantial evidence sustaining the conclusion of the trial court and the appellate division that there was no foreign value of the involved merchandise; but there is nothing in the record with respect to the business practices of other manufacturers in Germany, and there is nothing to show that such or similar merchandise was not freely offered for sale in Germany by other manufacturers in usual wholesale quantities at a uniform price, in the ordinary course of trade, without restrictions of any kind.

While the facts in the present case are not analogous with those before the court in the cited one, yet the principle enunciated there may be applied here. In other words, testimony relating only to transactions between a foreign principal and its exclusive United States selling agent, as related by the latter, is not sufficient to establish dutiable value, without a showing that the business of the foreign manufacturer is representative of the usual course of trade followed by others engaged in the manufacture of such or similar merchandise, in the country of exportation.

Since the record before me utterly fails to show values, other than those found by the appraiser which are presumptively correct, I therefore hold the latter to be the proper dutiable values of the merchandise in question. Judgment will be rendered accordingly.