(A. R. D. 41)

UNITED STATES *v.* S. SHAMASH & SONS, INC.

Entry No. 13259.

Third Division, Appellate Term

(Decided April 21, 1954)

*Warren E. Burger,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the appellant.
*John D. Rode* for the appellee.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This is an application for review of a decision and judgment of the trial court (Ford, J.), decided April 7, 1953, involving the proper dutiable value of silk piece goods exported from Japan on or about October 6, 1950, *S. Shamash & Sons, Inc.* v. *United States,* 30 Cust. Ct. 527, Reap. Dec. 8208.

The merchandise is described on the invoice as "JAPANESE SILK FLAT CREPE, 16 Momme, Bleached, Size 36″ x 50 yds. Grade: A & B." It was originally entered at 90½ cents per yard, but, subsequently, by amendment, the entered value was reduced to 70 cents per yard. It was appraised as entered on April 25, 1951.

The importer contended before the trial court that the proper basis of value was the export value, as defined in section 402 (d) of the Tariff Act of 1930, and that said value was 80 cents per yard. The Government claims that the appraised value is the correct dutiable value. The position of the importer in claiming a higher valuation than the appraised value is explained by the fact that a lower rate of duty applies to silk piece goods valued at more than $5.50 per pound than to such goods valued at $5.50 per pound or less. (Paragraph 1205, Tariff Act of 1930, and said paragraph, as modified by the General Agreement on Tariffs and Trade, T. D. 51802.)

The trial court found that the proper basis of valuation for the merchandise herein was the export value, that such value was 90 cents per yard, and that the foreign value was no higher. In appealing from that decision, the Government claims that the evidence does not support the findings of the lower court, that the appraised value represents the correct dutiable value, and that the importer has failed to overcome the presumption of correctness attaching to the appraiser's action.

Since a detailed analysis of the evidence appears in the decision of the trial judge, we believe it would serve no useful purpose to outline the facts again, but they will be referred to as necessary in considering the questions raised by this appeal.

At the outset, particular attention should be paid to the fact that the date of exportation herein was October 6, 1950. The time factor is of importance because the prices quoted in the offers and sales in evidence herein vary from day to day within a range of 70 cents to 90 cents per yard. In accordance with section 402 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, the dutiable value (whether foreign, export, or United States) is based upon the market value or price *at the time of exportation* of the merchandise. Consequently, offers and sales made considerably before or after the date of exportation may be too remote, especially where the market is not steady. *Roessler & Hasslacher Chemical Co.* v. *United States*, 1 Ct. Cust. Appls. 290, T. D. 31353; *United States* v. *New York Merchandise Co., Inc.*, 31 C. C. P. A. (Customs) 213, C. A. D. 274; *Sunshine Mushroom Imptg. Corp.* v. *United States*, 1 Cust. Ct. 749, Reap. Dec. 4457.

The instant merchandise was purchased by the importer pursuant to an offer from Maruyei Co., Inc., Osaka, Japan, dated August 14, 1950, for 70 cents per yard. There was evidence that this merchandise was offered only to the importer and that it consisted of so-called Kodan goods, that is, that it had been obtained from an official Government agency, the Textile Foreign Trade Association, or Kodan. Kodan was organized to purchase and sell surplus silk piece

goods, which it disposed of at certain stated times and in limited quantities. It did not offer the goods to all purchasers in the ordinary course of trade but only on a contract or a sealed bid basis. Applications for purchase had to be received on certain dates, the right to inspect the goods was conditional, the agency reserved the right to suspend sales and to reject bids which were unsatisfactory, and there was no guarantee of the quality of the goods.

The record contains evidence of another sale at 70 cents per yard, by Japan Cotton and Trading Co. to the importer on September 15, 1950. This was also Kodan goods and was offered only to the importer.

We are in agreement with the holding of the trial judge that these sales do not establish the value of the merchandise in accordance with the requirements of section 402, not only because the merchandise was not freely offered to all purchasers in the ordinary course of trade, but also because, under the circumstances of this case, the dates are too far removed from the date of exportation herein.

The Government has also introduced evidence of certain sales of 16-momme crepe silk on October 26, 30, and 31, 1950. These sales not only occurred a considerable time after the date of exportation, but they involved crepe 40'' wide, whereas the instant merchandise is 36'' wide. The Government claims they are, nevertheless, evidence of the value of the imported fabric on the ground that, according to the witness Henry Otten, the price for 40'' goods is the basic price for 36'' goods, plus one-ninth for the increase in width. However, dutiable value must be determined under the statute by offers and sales and not by means of a mathematical computation. *United States* v. *Alatary Mica Co.*, 19 C. C. P. A. (Customs) 30, T. D. 44871. In the case relied upon by the Government, *United States* v. *Arkell Safety Bag Co.*, 22 C. C. P. A. (Customs) 258, T. D. 47210, it was held that value should have been found on the basis of the value of the paper *per se*, not the rolls in which it was wound. The court pointed out that the controversy did not depend upon any difference in the width or size of the paper sold for domestic use and that exported, but solely upon the difference in the diameter of the rolls. The court did not pass upon the correctness of the appraiser's appraisement or his methods of calculation of value.

In the instant case, the difference between the two articles is the width of the silk, not the method of packing. The *Arkell Safety Bag Co.* case is not in point.

In order to establish a value other than the appraised value, the importer submitted a number of affidavits executed by members or employees of firms engaged in the silk piece goods business in Japan and several price lists and quotations on various dates between September 10 and October 30, 1950.

The Government has endeavored to cast a doubt on the authenticity of the affidavits on the ground that they contain identical language. An examination of these documents discloses that they are not identical, but that similar phraseology has been used in the statements having to do with market value or price. In this, they merely follow the definition of export value given in section 402 (d). There is nothing in the record tending to impeach the veracity of the affiants or to indicate that the affidavits are not authentic.

As the trial judge pointed out, some of the affidavits state that the price at which this merchandise was freely offered for sale on October 6, 1950, to all purchasers in the usual wholesale quantities in. the ordinary course of trade in the principal markets of Japan, was " 'approximately' 80 cents per yard." We are in agreement that such statements are entitled to little weight due to the indefinite language used. On the other hand, plaintiff's exhibit 16 states that the freely offered price on October 6, 1950, was 80 cents per yard, and plaintiff's exhibit 18 states that such price was between 79 cents and 80 cents per yard. In addition, plaintiff's exhibits 14, 15, 17, 20, and 21 each state that on or about October 6, 1950, the affiant's firm freely offered such or similar merchandise at a price of 80 cents per yard and that the market value or the price for home consumption in Japan was no different.

While the statements in these affidavits to the effect that the market price on or about October 6, 1950, was approximately 80 cents per yard may be conclusions of the witnesses entitled to no weight under the rule laid down in *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495, a declaration that affiant's firm freely offered the merchandise at 80 cents per yard sets forth evidentiary facts which may properly be considered by the court.

While no evidence of actual sales is attached to the affidavits, the importer produced several price lists and quotations and the Government also offered one. It is well settled that offers for sale, as well as actual sales, must be considered in determining market value, and that offers, if made to all purchasers, may establish value. *Robinson & Co.* v. *United States*, 13 Ct. Cust. Appls. 644, T. D. 41486; *Oceanic Trading Co.* v. *United States*, 21 C. C. P. A. (Customs) 146, T. D. 46478; *United States* v. *T. E. Ash*, 22 C. C. P. A. (Customs) 395, T. D. 47401.

An examination of the price lists submitted herein shows the following variances in prices at the end of September and the beginning of October 1950: September 27, 80⅝ cents (plaintiff's collective exhibit 7); September 28, 73½ cents (defendant's exhibit C); September 29, 81 cents (plaintiff's collective exhibit 11); September 30, 90 cents (plaintiff's collective exhibit 9); October 3, 84 cents (plaintiff's exhibit 10); October 4, 80½ cents (plaintiff's collective exhibits 6 and

7); October 5, 76¼ cents (plaintiff's collective exhibit 8); October 12, 79½ cents (plaintiff's collective exhibits 4 and 6).

One of the affidavits herein, which states that the merchandise was offered on or about October 6, 1950, at 80 cents per yard, was executed by an employee of Asahi Silk Co., Ltd. (plaintiff's exhibit 21). In support of this statement are price lists of that firm showing that such merchandise was offered on October 4 at 80½ cents per yard (plaintiff's collective exhibits 6 and 7) and on October 12 at 79½ cents per yard (plaintiff's collective exhibits 4 and 6). Plaintiff's exhibit 18 is an affidavit of an employee of Maruyei Co., Inc., wherein it is stated that the market price on or about October 6, 1950, was between 79 and 80 cents per yard, and that it averaged between 80 and 81 cents per yard during September and October 1950. In support of this affidavit is an offer by said firm to the importer, dated October 3, 1950, at 84 cents per yard (plaintiff's exhibit 10).

In addition to the documentary evidence, the witness George F. Weitner, traffic manager and director of Pongees Corp., importer and distributor of silk goods, testified that his firm had received a quotation on October 4 at 85.7 cents and had purchased such merchandise during September and October 1950 at prices between 80 and 85 cents per yard.

The Government claims that no value can be found on the evidence presented because of the lack of uniformity of price, relying upon *United States* v. *M. V. Jenkins*, 39 C. C. P. A. (Customs) 158, C. A. D. 479. In that case, the different sellers offered the merchandise at varying prices, some of which depended upon the bargaining ability of the purchaser and some of which were unexplained. It was, consequently, impossible to find a price at which the merchandise was offered to all purchasers.

It may be that in the instant case there were sales of this merchandise at lower prices depending upon the bargaining ability of the purchaser. For example, Mr. Otten testified that his firm's price list was subject to counteroffer, and there is evidence that Mr. Shamash was able to purchase below the list prices in some instances. These variances need not concern us since market value must be based on the freely offered price to all purchasers and not on that offered to some who had greater bargaining ability. *United States* v. *Mexican Products Co.*, 28 C. C. P. A. (Customs) 80, C. A. D. 129.

The prices at which this merchandise was freely offered to all purchasers are those shown in the price lists and referred to in the affidavits, and the only variances are those which reflect a fluctuating market. In our view, therefore, the market value of the instant merchandise is the price at which it was being freely offered to all purchasers on the date of exportation. The weight of the evidence establishes that that price was 80 cents per yard.

The Government claims that the importer has failed to establish the usual wholesale quantities in which this merchandise was freely offered for sale and that such omission is fatal to its case. It has been held many times that the party challenging the value found by the appraiser is required to meet every material issue involved in the case. *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276; *Brooks Paper Company* v. *United States, supra; United States* v. *Fisher Scientific Company*, 40 C. C. P. A. (Customs) 164, C. A. D. 513. In many instances, one of these issues is the usual wholesale quantities since prices may vary with the quantity purchased and dutiable value is based upon the price at which the major portion of sales was made. *United States* v. *M. Minkus*, 21 C. C. P. A. (Customs) 382, T. D. 46912; *Brooks Paper Company* v. *United States, supra; United States* v. *Fisher Scientific Company, supra.* On the other hand, it has been held that where the price at which an article is sold does not vary according to quantity, no question of usual wholesale quantity can arise. *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093; *United States* v. *Wm. A. Foster & Co., Inc. (Standard Rolling Mills, Inc.)*, 34 C. C. P. A. (Customs) 9, C. A. D. 336.

In the instant case, the price lists give but one price for the merchandise on a certain day and do not indicate that the price depended in any way upon the quantity purchased. The affidavits state that the merchandise was freely offered at a certain price; nothing is said to show that there were different prices for different quantities. None of the witnesses stated that the price varied according to quantity. It was, therefore, unnecessary for the importer to establish the usual wholesale quantity, since the value would be the same regardless of quantity. The issue to be determined is value, and quantity is involved only where it affects value.

We conclude that the proper basis for determining the value of the within merchandise is the export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, that such value is 80 cents per yard, packed, and that the foreign value is no higher. To that extent, the decision and judgment of the trial court is modified.

On the record presented, we find as facts:

1. That the merchandise involved herein consists of Japanese silk flat crepe, 16 momme, bleached, size 36″ x 50 yards, exported from Japan on or about October 6, 1950.

2. That on or about October 6, 1950, such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Japan, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings, and all other costs, charges, and expenses

incident to placing the merchandise in condition, packed ready for shipment to the United States at 80 cents per yard.

3. That the price at which the same was freely offered to all purchasers for home consumption in Japan was no higher.

4. That the price was the same regardless of the quantity purchased.

We conclude as matters of law:

1. That the export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, is the proper basis for determining the value of the within merchandise.

2. That such value is 80 cents per yard, packed.

Judgment will be rendered accordingly.