(Reap. Dec. 8860)

ANTIQUE IMPORT CO. *v*. UNITED STATES

Entry No. 731272, etc.

(Decided June 20, 1957)

*William Whynman* for the plaintiff.

*George Cochran Doub*, Assistant attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

JOHNSON, Judge: The appeals for reappraisement enumerated in schedule "A," attached hereto and made a part hereof, consolidated at the trial, cover various items, principally of chinaware and glassware, imported from West Germany during the years 1952, 1953, and 1954. The merchandise was entered at the unit invoice prices, plus packing, and was appraised at the said unit invoice prices, plus 40 per centum, plus packing.

The evidence presented at the trial consisted of the testimony of Mrs. Ursula Celnik, whose statements may be summarized as follows: The plaintiff herein, Antique Import Co., is now and, in 1952, was owned solely by her husband, but she has no interest in the business. In 1948, when she and her husband were living in Germany, Mrs. Celnik went into business in Berlin, as a partner of her brother-in-law (her husband's brother). In 1951, Mr. Celnik came to the United

States to live and went into the antique business in New York Although Mrs. Celnik came to the United States in 1951 with her husband, she went back to Germany after a month and continued in business there until 1955. Her husband had no interest in that business and, when it was sold, the proceeds were divided between Mrs. Celnik and her brother-in-law.

The business of Mrs. Celnik's firm, Omnia, was the buying and selling of antique objects of glass, porcelain, wood, majolica, earthenware, and bronze. Mrs. Celnik was the manager; she bought, sold, and fixed the selling prices. She purchased the merchandise mostly from private individuals in Germany. Sometimes, she went to their homes to see what they had, and sometimes they brought articles to the store. The articles she dealt in were not purchased in large quantities from factories, but from private people, one or two pieces at a time. Sales were generally of one, two, or three articles; nothing was sold in quantity. There were other stores or companies like Omnia in Berlin dealing in the same kind of merchandise; Berlin was a market place for it.

Omnia offered the merchandise to everybody, and the prices were the same whether one or more articles were sold. The purchaser was not told at what price he should sell it or what he should do with it. Sales were made in Berlin to many customers, some of whom lived in Germany, and others in the United States, France, and South America. The merchandise was not sold exclusively to Mr. Celnik's firm. Among those to whom articles were sold for export to the United States were Doub on Third Avenue; Veissid; Globe Overseas; and Terragano in Miami Beach. The witness did not remember the dates of these sales, but said that the purchasers bought more than once.

The witness was shown the papers in connection with reappraisement No. 244032-A, entry No. 731272, dated August 28, 1952, and her attention was directed to an invoice of Omnia, dated June 27, 1952, and, in particular, to an item marked "G 1/3 3 Gruppen——25——" [deutschemarks]. She stated that the price was the price at which she sold the merchandise to her husband. He was not given a reduced price; the price was the same for everyone. It was not the price she had paid for the merchandise, but included a profit. In the case of objects costing a hundred marks or more, the profit is 30 per centum and, in the case of less expensive objects, the profit is 40 per centum.

At this point, counsel stipulated that if the same questions were asked the witness as to each of the items in the reappraisements involved herein, her answers would be the same.

On cross-examination, the witness reiterated that her purchases were from private individuals. She stated also that she did not

buy decorated earthernware from dealers in East Germany or Czechoslovakia nor any decorated earthenware that was a product of Czechoslovakia or East Germany.

Her attention was directed to item No. 105 on an invoice in reappraisement No. 244033–A, and she stated that the 207 pieces were collected from many people over a long period of time. She said that merchandise described on the invoices as P 54 to 16 and P 55/7, Affenkapelle, was purchased in West Germany, but she did not know how old it was. She can tell if an article is a hundred years old, but she cannot tell the difference between a 30-year-old item and a new one.

At the time this merchandise was imported, section 402 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, provided that the value of imported merchandise shall be the foreign value or the export value, whichever is higher, and defined these values as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

There is a statutory presumption in favor of the value found by the appraiser, and the burden is upon the plaintiff to prove the action of the appraiser erroneous and to establish some other dutiable value as the proper one. *H. S. Dorf & Co., Inc.* v. *United States*, 41 C. C. P. A. (Customs) 183, C. A. D. 548; *Kobe Import Co.* v. *United States*, 42 C. C. P. A. (Customs) 194, C. A. D. 593. In order to sustain this burden, plaintiff must meet every material issue involved in the case and, if he fails to do so, the value found by the appraiser must stand. *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495.

In the instant case, plaintiff's witness has stated that this merchandise was offered to everybody, not only to the plaintiff herein; that sales were made to many customers; that the price was the same to all; that the prices were represented by the invoice prices; that the

merchandise was sold to customers in Germany as well as for export; that it was usually sold in quantities of one or two articles, but the price did not vary whether one or more articles were purchased; that no restrictions were placed on purchasers as to the price at which they might sell or the use they might make of the articles.

Mrs. Celnik's testimony was given in the presence of opposing counsel; she was cross-examined at length, but her testimony was not rebutted or discredited, nor was any contradictory evidence presented. Although the situation is unusual in that the seller was a firm in which the wife had an interest and the purchaser was a firm owned by the husband, Mrs. Celnik stated positively that the plaintiff received no reduction in price but paid the same as any other customer would have. The court, having observed the demeanor of the witness, is not disposed to disbelieve her testimony.

In view of the statement of the witness that the merchandise was sold at the same price whether one or more articles were purchased, no question of usual wholesale quantity can arise, and a single article may be regarded as a usual wholesale quantity. *Jenkins Bros.* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093; *United States* v. *S. Shamash & Sons, Inc.*, 32 Cust. Ct. 665, A. R. D. 41, and cases cited. Since the evidence establishes the price at which "such" merchandise was freely offered to all purchasers both for home consumption and for export, the foreign or export value of "similar" merchandise, if any, is immaterial. *United States* v. *Meadows Wye & Co., Inc.*, 15 Ct. Cust. Appls. 451, T. D. 42643; *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714.

On the record presented, I hold that plaintiff has overcome the presumption of correctness attaching to the appraiser's action and has established *prima facie* that the correct dutiable values of this merchandise are the invoice prices, plus packing.

I find as facts:

1. That the merchandise involved herein consists of various items, principally of chinaware and glassware, imported from West Germany during the years 1952, 1953, and 1954.

2. That the merchandise was entered at the unit invoice prices, plus packing, and was appraised at the said unit invoice prices, plus 40 per centum, plus packing.

3. That the merchandise was freely offered for sale to all purchasers in the ordinary course of trade in the principal market, Berlin, Germany, for home consumption and for export at the unit invoice prices.

4. That the merchandise was usually sold in quantities of one, two, or three articles, but the price did not vary whether one or more

articles were purchased; that no restrictions were placed on the resale of the merchandise.

I conclude as matters of law:

1. That the foreign value of the merchandise, as defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, and the export value of the merchandise, as defined in section 402 (d) of the same act, are the same.

2. That the proper basis for determining the value of this merchandise is such foreign or export value.

3. That such foreign or export value in each instance is the unit invoice value, plus packing.

Judgment will be rendered accordingly.