**F & D TRADING CORPORATION**

v.

**UNITED STATES.**

Reap. Dec. 11360; Reappraisement R64/972.

United States Customs Court.
Sept. 18, 1967.

---

2. Other synonyms "a truck with crane", "wrecker truck", "crane truck".

3. Items of "machinery".

John D. Rode, New York City (Ellsworth F. Qualey, New York City, of counsel), for plaintiff.

Carl Eardley, Acting Asst. Atty. Gen. (Sheila N. Ziff, trial attorney), New York City, for defendant.

*RAO, Chief Judge:*

This appeal for reappraisement places in issue the proper value of certain Volkswagen automobiles which were exported from Germany in 1963. The automobiles, which are articles included in the Final List of the Secretary of the Treasury, T.D. 54521, were appraised on the basis of export value as defined in section 402a(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas.Dec. 295, T.D. 54165. Plaintiff claims that cost of production, as defined in section 402a(f) of the Tariff Act of 1930, as amended, is the proper basis of valuation, for the reason, alleged, that there was no foreign, export, or United States value for such or similar merchandise. Plaintiff further claims that the correct cost of production figures are those used by the appraiser in the valuation of other Volks-

wagen automobiles imported by Volkswagen of America, Inc., and American tourists.

The relevant statutory provisions are as follows:

Section 402a(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1965, 91 Treas.Dec. 295, T.D. 54165—

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402a(e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas.Dec. 295, T.D. 54165—

(e) UNITED STATES VALUE.— The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses,

not to exceed 8 per centum on purchased goods.

Section 402a(f) of the Tariff Act of 1930, as amended to the Customs Simplification Act of 1956, 91 Treas.Dec. 295, T.D. 54165—

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Under the Tariff Act of 1930, as amended, supra, cost of production as a means of ascertaining value is resorted to only if export value, foreign value, or United States value cannot be satisfactorily determined (§ 402a(a)). Thus, a party wishing to establish cost of production as the basis for valuation of an importation appraised on the basis of export value must first prove that the three above-mentioned methods of valuation are inappropriate. Moreover, by reason of the provisions of 28 U.S.C. section 2633, the appraised value is presumptively correct, and the party asserting the contrary is charged with the burden of proving that the appraised value is erroneous and that some other value, determined by means of the same or another statutory basis, is correct.

To this end, plaintiff offered in evidence the affidavits of Thure Dommenget and Rudolf Raab and the testimony of Erwin Losch and James Westburg, all of whom are engaged in some phase of the business of buying Volkswagen automobiles in Germany from sources outside the regular distribution channels of the Volkswagen Company and importing them to the United States.

The substance of the two affidavits, placed in evidence as plaintiff's exhibits 1 and 2, is that the affiants are engaged in the business of purchasing new and used Volkswagens in West Germany for resale to firms which export the automobiles for sale in the United States and profess a familiarity with the marketing of Volkswagens in Germany. In their respective operations, they make their purchases from individuals and from franchised Volkswagen dealers. According to the affiants, the price of such automobiles is a function of the availability of Volkswagens in the home market as controlled by the Volkswagen Company, the availability of Volkswagens through authorized dealers in the United States market, the bargaining ability of the purchaser and the type and condition of the particular automobiles. All such sales are contingent upon the transfer of the automobiles to the free port of Hamburg, upon evidence of which the West German Government grants a rebate to the exporters. It is in Hamburg also that the purchasers for exportation secure the alteration of the automobile for the United States market which entails the installation of safety glass wind-

shields, mileage speedometers, sealed beam headlights, white directional lights, and bumpers.

Plaintiff's first witness was Mr. Erwin Losch who buys and sells Volkswagen automobiles for the F & D Trading Corporation and has done so since 1961. Mr. Losch, stating that he spends 4 to 6 months of each year in West Germany, personally purchases Volkswagens made for the West German home market from approximately 15 dealers who are not factory authorized and who obtain their Volkswagens from individuals and authorized dealers acting outside the terms of their franchise. According to Mr. Losch, he purchased at least 4,000 Volkswagens in this manner in 1962 and at least 5,000 in 1963 and personally inspected approximately 9,000 automobiles in those years.

Mr. Losch testified that the prices at which he purchases the Volkswagen automobiles vary and may fluctuate during a single day as a result of the factors detailed supra in the summary of the affidavits. The automobiles are purchased by Mr. Losch contingent upon delivery to the free port of Hamburg to enable the seller to receive the aforesaid government rebate and, in order to secure eventual registration of the automobiles in the United States, for the so-called "Americanization" process for which the same sources of material are used as supply the Volkswagen factory. He states that the automobiles which he imports are the same as those offered in the showrooms of authorized United States dealers except for the presence of amber tail lights and a slight difference in support of the bumper. He considers the automobiles to be new if they have not been driven more than 100 or 150 miles. Neither would he consider that the so-called "Americanization" affected their newness.

Mr. Losch testified that he sells the Volkswagens thus obtained to dealers in the United States exercising care to avoid sales to neighboring dealers or individuals. These sales are without the factory warranty. In selling them, Mr. Losch presents them as Volkswagens or so-called demonstrators and not as new cars.

In examining the invoices, Mr. Losch was unable to state whether the parties listed as sellers had purchased the automobiles from authorized Volkswagen dealers or individuals, nor could he say whether he had actually inspected the automobiles in issue. He stated that, by examining the invoices and the price paid for the automobiles, he could determine that they were new.

Plaintiff's second witness was Mr. James Westburg, president of Drexel Motors, Inc., who testified that he buys and sells Volkswagens in essentially the same manner as Mr. Losch and has been doing so for 8 years. Mr. Westburg also expressed similar views regarding the fluctuation in price of the cars he purchased and the criteria for determining whether a car was new. He did state, however, that he offered the automobiles as new in the United States except in certain papers where trade understandings forbade such representations by unfranchised dealers.

Mr. Bertram Saul, New York Customs Examiner, appeared, pursuant to a subpoena *duces tecum.* He testified that he has been the examiner in charge of the appraisement and classification of automobiles and spare parts since July 1959 and that it is his duty to investigate the domestic and foreign markets in order to ascertain the proper customs valuation of imported merchandise and to disseminate such information to examiners and appraisers in other ports.

In this case, Mr. Saul's advisory recommendations with regard to the valuation of the instant automobiles were followed by the appraiser in Newark. The basis of appraisement was export value, arrived at by adding the cost of Americanization to the purchase prices shown on the invoices. Mr. Saul drew a distinction between automobiles manufactured for the West German market and then Americanized and automobiles produced for export or imported by tourists. He does not consider the former as new cars, although their condition as imported may be sub-

stantially the same as those imported by Volkswagen of America, Inc. By reason of the fact that the instant automobiles have left the regular channels of distribution established by the manufacturer and have been registered to an owner, they are treated as second hand and appraised on the basis of export value.

Mr. Saul stated that a so-called cost of production information sheet, circulated by him for the purpose of providing a value for the Volkswagens imported by Volkswagen of America, Inc., and those imported by tourists, was based on information contained in a letter from counsel representing Volkswagen Corporation of America and on no other source.

The document, introduced in evidence as plaintiff's exhibit 3, is entitled "Volkswagen Autos" and commences as follows:

Cost of Production information received from the manufacturer covering the second half of 1962 results in the values below to be used for appraisements of shipments exported from February 1, 1963 to July 31, 1963.

The remainder of the document consists of a list of automobile model numbers, short verbal descriptions, total cost of production figures in Deutsche marks and advisory classification information.

Defendant introduced in evidence as defendant's exhibit A the January 10, 1966 issue of Automotive News containing an advertisement by the F & D Trading Corporation offering Volkswagens for sale, which advertisement was stated by Mr. Losch to be the same as that used in 1963.

On the basis of the testimony summarized above, plaintiff claims to have satisfied its first burden of disproving the existence of an export value for the imported merchandise by demonstrating that there was no single uniform price at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of West Germany in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States.

The court is of opinion, however, that such a conclusion is not justified and that the plaintiff has failed to negative the value found by the appraiser. The affidavits and testimony offered in support of plaintiff's contention contain a paucity of substantial convincing proof with regard to the purported fluctuation of prices and the claimed reliance on bargaining in the sales transactions. The testimony contains only the unsupported assertions and conclusory statements of the affiants and witnesses that the prices of the automobiles were subject to fluctuations. This does not suffice to satisfy plaintiff's burden of proof in overcoming the presumption of correctness attaching to the appraiser's valuation. See the illuminating discussion in Brooks Paper Company v. United States, 40 CCPA 38, C.A.D. 495; United States v. Baar & Beards, Inc., 46 CCPA 92, C.A.D. 705; Morris Friedman v. United States, 52 Cust.Ct. 660, A.R.D. 178.

In short, the law requires, not assertions and conclusions, but clear evidentiary material from which a logically developed and clearly reasoned conclusion can be drawn. In point of fact, the only tangible evidence which does give rise to some inference with regard to the stability of the importations' price tends to negate plaintiff's assertions. This is to be found in the invoice statements of the costs of the imported automobiles prior to Americanization. These invoices indicate that five of the imported model 112 automobiles, purchased from four separate firms on two different dates were all obtained for the price of 4,800 Deutsche marks each. Two differently equipped versions of the same model were obtained for 4,880 Deutsche marks from two other firms, again on two distinct dates. There seems to be, therefore, reason to believe that the price for such autos was a constant one during the period in dispute. At the very least, the invoices offer no support for the contention that the prices varied and that each price was the result of bargaining which took place under changing market influences. Had such been the case, the fluctuation could have

been readily demonstrated by the invoices accompanying some of the thousands of purchases which the witnesses made.

■■ Plaintiff's failure to negative the existence of export value, the basis of appraisement adopted by the appraiser in returning values for the cars at bar, is alone sufficient to preclude it from prevailing in this case. But if this determination were on less than firm ground, the court must nevertheless conclude that plaintiff has failed to establish the correctness of its contention. The statutory burden imposed upon a party challenging the appraised value is to show not only that the appraiser erred, but that the claimed value is correct. Kittleson v. United States, 40 CCPA 85, C.A.D. 502.

■ In this instance, plaintiff seeks to invoke the cost of production provisions of the valuation statute as the correct alternative basis of value. Before reaching that basis, however, assuming, *arguendo*, the absence of any export value, it was incumbent upon plaintiff, as hereinabove stated, to negative the existence of statutory United States value.

■ As to this basis, the record is clearly wanting. While the witness Losch testified that his sales in the United States are restricted to selected dealers and are not made to all purchasers, there is no evidence other than his unsupported statement to that effect that other importers of cars in this category sold in the same way, and, although plaintiff's second witness Mr. James Westburg, was a member of a competitive importing firm, he was not asked to describe his company's American sales practices within the framework of the elements of United States value.

Furthermore, notwithstanding the fact that all sales of such or similar merchandise made by competitive importers may have been limited to selected dealers, there is no evidence to show that sales by dealers did not comply with the statutory definition. See United States v. H. W. Robinson & Co., State Forwarding Co., and Edgar S. Bibas, 19 CCPA 274, T.D.

45436, and Glanson Co. v. United States, 31 Cust.Ct. 473, A.R.D. 33, for the relevance of resales by dealers in the determination of statutory foreign, export, and/or United States value.

■ In any event, the court is of opinion that a value predicated upon statutory cost of production has not been properly shown. It is suggested that the instant automobiles are for the most part physically the same as those automobiles imported by Volkswagen of America, Inc., and appraised on the basis of cost of production. The argument is made that they should, therefore, be valued in accordance with the cost of production figures found in plaintiff's exhibit 3, the document used for the appraisal of Volkswagens imported by the authorized Volkswagen distributor. Even were it to be assumed, however, that the physical similarity between the instant automobiles and the factory authorized importations has been established, there are substantial objections to this method of establishing cost of production.

■ The presumption of correctness which attaches to the determinations and actions of the appraising official comes into play only in connection with the merchandise in issue and does not serve as evidence to satisfy a party's burden of proof in another action. Thus, in the present situation, the determinations and conclusions of the appraiser with respect to other importations are subject to the same objections and exclusionary rules as all other evidence. The fact that this document was used and circulated by the appraiser in the valuation of other imported Volkswagen automobiles does not disguise the fact that in its form as introduced in the instant case it is hearsay evidence. It is plainly a written statement, not made in the course of the trial, which is offered for the truth of the facts therein asserted. It is an unsigned document of uncertain compilation, not a report of an examiner, such as should be admitted into evidence in the appraisement proceedings before a single judge under the

protection of section 2633 of title 28 of the United States Code.

 Evidentiary objections aside, the form of this document is such as makes it unsuitable for use as proof of cost of production. It is established that cost of production should properly be itemized in accordance with the subdivisions of section 402a(f). Wirth et al. v. United States, 23 CCPA 283, T.D. 48144; Snow v. United States, 24 CCPA 319, T.D. 48767. Thus a sum total figure without an indication of the cost of materials and of manufacture or production, the usual general expenses, the cost of coverings, etc., and an addition for profit is unacceptable.

In light of the above, the court makes the following findings of fact:

1. That the importation involved herein consists of Volkswagen automobiles, styles 113 and 117 of model 1200, which were manufactured by the Volkswagen Company in West Germany for home consumption;

2. that these automobiles were purchased by the importer herein from dealers and individuals and, prior to exportation in 1963, underwent certain preparations for the United States market;

3. that the merchandise is identified on the Final List of the Secretary of the Treasury, T.D. 54521, and was appraised on the basis of export value as defined in section 402a(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165;

4. that, during the period in question, such or similar merchandise was not freely offered for sale to all purchasers for home consumption in West Germany;

5. that there is no evidence to show that there was no uniform price at which such merchandise was sold for exportation to the United States;

6. that there is no other satisfactory evidence of record to negative the appraised values or to show that the claimed values are correct;

7. that the presumption of correctness attaching to the values found by the appraiser has not been overcome;

8. that the appeal for reappraisal of the car invoiced as "1 PKW Volkswagen Export Variant new" has been abandoned.

The court, therefore, concludes as matters of law:

1. That export value, as defined in section 402a(d) of the Tariff Act of 1930, as amended by said Customs Simplification Act of 1956, is the proper basis for determination of the values of the merchandise here involved;

2. that such statutory value is, with respect to each article in dispute, the value returned by the appraiser;

3. that the appeal for reappraisal of the car invoiced as "1 PKW Volkswagen Export Variant new," having been abandoned, is hereby dismissed.

Judgment will be entered accordingly.