(A.R.D. 268)

F & D Trading Corporation v. United States

Entry No. 1020021.

Third Division, Appellate Term

(Decided February 6, 1970)

*John D. Rode* (*Ellsworth F. Qualey* of counsel) for the appellant.
*William D. Ruckelshaus*, Assistant Attorney General (*Bernard J. Babb* and *Sheila N. Ziff*, trial attorneys), for the appellee.

Before RICHARDSON, LANDIS, and FORD, Judges; LANDIS, J., dissenting

RICHARDSON, Judge: This application was filed by the importer for a review of the decision and judgment of a single judge sitting in reappraisement in *F & D Trading Corporation* v. *United States*, 59

Cust. Ct. 666, R.D. 11360, 273 F. Supp. 431 (1967), and holding that export value as appraised is the proper dutiable value of Volkswagen automobiles exported from West Germany. Appellant-importer claimed below and claims here that the automobiles should be appraised under the cost of production basis of appraisement, there being no foreign, export, or United States values for such or similar merchandise. And the broad question presented in this application is whether there was substantial evidence presented to the single judge to overcome the presumption of correctness attaching to the findings of the collector.

The record before the single judge consisted of the testimony of three witnesses, two affidavits, other documentary evidence and the official papers, all adduced on behalf of appellant, the plaintiff below. The appellee, defendant below, called one of appellant's witnesses as its own witness.

It appears from the evidence that the involved Volkswagens were purchased by appellant in 1963 in West Germany from certain West German "exporters" and paid for in cash at what appellant's business manager called "new car prices," delivery being made by the sellers to appellant at the free trade zone in Hamburg, West Germany, as a condition to receiving payment. At the free trade zone appellant had the Volkswagens modified at its own expense to meet American standards, after which appellant exported the cars from West Germany to this country where they were appraised upon entry on the basis of export value.

The modification of the involved Volkswagens in the free trade zone at Hamburg, or "Americanization" of these cars as it is called, consisted, where needed, of the installation of safety glass windshields, leather seats, a mileage speedometer (as opposed to kilometer), sealed beam headlights, white directional lights and bumpers. The result of all of this is that these imported Volkswagens, which are of the well-known beetle type—styles 113 and 117 of model 1200—were not exported to the United States in the condition in which they were acquired by appellant in West Germany, the country of exportation.

The record indicates that the involved Volkswagens were acquired originally by the West German sellers from Volkswagen's franchised dealers and from private individuals, that no manufacturer's warranty was given by the franchised dealers with these cars, apparently as a means of shielding the dealers against possible punitive measures to be taken by the manufacturer against such dealers for placing these cars outside of the control of the franchise, and that during 1962 appellant purchased and exported to the States some 4000 of these Volkswagens in this fashion, and another 5000 of such cars in the

same way during 1963. And there were about 15 German based businesses selling Volkswagens in this manner to appellant and other American dealers, but their number had been reduced to about six at the time of trial herein.

The affidavits of Rudolf Raab and Thure Dommenget, West German sellers, were placed in evidence by appellant as exhibits 1 and 2 with a view toward showing, among other things, that the market for Volkswagens sold outside of the franchise was confined to dealers such as appellant, and that the market for Volkswagens handled within the franchise was controlled by the manufacturer, Volkswagen Werke, of Wolfsburg, West Germany, down through the consumer or user. The testimony of Erwin Losch, a buyer and seller of Volkswagens for appellant, and James Westburg, president of Drexel Motors, Inc., a buyer and seller of Volkswagens, among other cars, was adduced by appellant with a view toward corroborating statements contained in exhibits 1 and 2 relative to home market practices as to Volkswagens and showing that the domestic market for the sale and distribution of Voklswagens in the United States within the franchise is controlled by the manufacturer through its American representative and importer-distributor, Volkswagen of America, Inc., and that the domestic market for the sale and distribution of Volkswagens in the United States outside of the franchise is restricted to dealers to whom appellant and other importers of such cars resell the Volkswagens. And the testimony of Bertram Saul, customs examiner in charge of appraisement and classification of automobiles and spare parts at the port of New York, was adduced by appellant with a view toward establishing that Volkswagens imported into the United States within the franchise during 1963 were appraised on the basis of cost of production, and that Volkswagens imported into the United States outside of the franchise during 1963 by appellant and other importers of such vehicles are considered by appraising officers to be "second hand" and as such are appraised on the basis of export value which is determined by adding the cost of Americanizing them there prior to exportation to the purchase price paid upon acquisition of such vehicles in West Germany. Examiner Saul's testimony was also offered by appellee with a view toward clarifying the reason for appraising Volkswagens imported into the United States outside of the franchise in a different manner than those imported into the United States within the franchise. His explanation was that he classified them as second hand cars.

In question before the trial court and here is the sufficiency of the said affidavits and testimony to eliminate export and United States values for the involved merchandise, it being virtually conceded by

appellee that foreign values therefor are nonexistent, and to support a cost of production appraisement for such merchandise in the amounts contended for by appellant.

On the matter of export value, the trial court rejected the statements in exhibits 1 and 2 on the ground that in that court's opinion the exhibits lacked substantial convincing proof with regard to the purported fluctuation of prices and the claimed reliance upon bargaining in the sales transactions; and the court also rejected the testimony on the ground that it constituted unsupported assertions and conclusory statements of the witnesses to the effect that the acquisition prices of the subject Volkswagens fluctuated. The court found evidence among the invoices covering the Volkswagens at bar that the prices paid therefor by appellant *prior to Americanization* did not fluctuate. The court in its opinion did not discuss the appropriateness of the method employed herein by the appraiser in returning export values as disclosed in the testimony of the examiner, which was, as previously indicated, the addition of the cost of Americanization to the acquisition price. The aforementioned reasons led the trial court to conclude that appellant had failed to rebut the presumption of correctness attaching to the appraisement of the involved Volkswagens on the basis of export value.

On the matter of United States value, the trial court was of the opinion that the evidence was wanting—the court discounting the testimony of the witness Losch that appellant's sales and those of its competitors were restricted to selected dealers as not being supported by other evidence. The trial court also concluded that the evidence did not negative the existence of United States value predicated on sales by the dealers to whom appellant and its competitors resold the involved Volkswagens, citing *United States* v. *H. W. Robinson & Co. et al.*, 19 CCPA 274, T.D. 45436 (1932), and *Glanson Co.* v. *United States*, 31 Cust. Ct. 473, A.R.D. 33 (1953).

And on the matter of cost of production value, the trial court rejected appellant's contention that the imported Volkswagens should be appraised at the same cost of production figures utilized by the appraiser in returning values for Volkswagens imported into the United States within the franchise, finding substantial objections to appellant's method for establishing cost of production values for the involved Volkswagens. In this connection the trial court said (59 Cust. Ct. at pages 673-674):

> The presumption of correctness which attaches to the determinations and actions of the appraising official comes into play only in connection with the merchandise in issue and does not serve as evidence to satisfy a party's burden of proof in another action. Thus, in the present situation, the determinations and conclusions

of the appraiser with respect to other importations are subject to the same objections and exclusionary rules as all other evidence. The fact that this document was used and circulated by the appraiser in the valuation of other imported Volkswagen automobiles does not disguise the fact that in its form as introduced in the instant case it is hearsay evidence. It is plainly a written statement, not made in the course of the trial, which is offered for the truth of the facts therein asserted. It is an unsigned document of uncertain compilation, not a report of an examiner, such as should be admitted into evidence in the appraisement proceedings before a single judge under the protection of section 2633 of title 28 of the United States Code.

Evidentiary objections aside, the form of this document is such as makes it unsuitable for use as proof of cost of production. It is established that cost of production should properly be itemized in accordance with the subdivisions of section 402a(f). *Philipp Wirth et al.* v. *United States*, 23 CCPA 283, T.D. 48144; *Mrs. G. P. Snow* v. *United States*, 24 CCPA 319, T.D. 48767. Thus a sum total figure without an indication of the cost of materials and of manufacture or production, the usual general expenses, the cost of coverings, etc., and an addition for profit is unacceptable.

Among the assignments of error lodged by appellant against the decision of the court below appellant contends that the trial court erred—

1. In affirming the values found by the Appraiser and rendering judgment in favor of the Government.

    *       *       *       *       *       *       *

3. In finding and holding that there was at the date of exportation an Export Value as defined in the statute (Section 402a(d) Tariff Act of 1930 as amended) for such or similar automobiles.

4. In finding and holding that at the date of exportation plaintiff had not proved that there was no Export Value and no United States Value as defined in the statute for such or similar merchandise.

    *       *       *       *       *       *       *

7. In holding that the cost of production used by the Appraiser for the appraisement of Volkswagen automobiles could not be used as the Cost of Production under the statute for the merchandise involved in the instant appeal.

8. In not finding and holding that the merchandise was properly dutiable on the basis of Cost of Production as defined in the Statute.

With respect to export value appellant argues, among other things, that appraisement of the involved Volkswagens on the basis of the actual price paid therefor in West Germany plus the cost of Americanization of them does not comply with the requirements of statutory export value. Appellee counters this argument with the contention that

the appraiser was correct in finding that the market price or value for each Americanized car was equivalent to these costs. While these arguments do not meet the basis upon which the trial court acted in sustaining the export value appraisements herein, there appears to be no question but that the appraisements herein are the product of an arithmetical addition of the modification cost to the acquisition cost prior to exportation of the Volkswagens from West Germany. Examiner Saul testified on direct examination (R. 141) :

> Q. Mr. Saul, I believe that you testified that the particular cars that are involved in Plaintiff's Exhibit 4 were appraised on export value?—A. It was—it appears that way, yes.
>
> Q. Was this export value calculated by the addition of the purchase price to the cost of alterations as stated in the invoices?—A. Yes.

In view of this testimony as well as other evidence relating to modification of the involved Volkswagens in Hamburg, Germany, prior to exportation, which evidence is uncontroverted, we do not think the trial court should have predicated its decision herein on the matter of export value upon a consideration of market practices relating to the time and circumstances surrounding the acquisition of these automobiles by appellant. Such market practices do not reflect the condition of the merchandise at the time of its exportation to the United States. And where, as is shown here, an importer modifies the merchandise between the time of acquisition or purchase abroad and the time of exportation of same to the United States the value of such merchandise for appraisement purposes must be determined in accordance with the condition of the merchandise at the time of its exportation. See *United States* v. *Alex Schechter Corp.*, 25 CCPA 107, 110–111, T.D. 49240 (1937). Of course, appraisement here shows implicit recognition of the inappropriateness of valuing the instant merchandise on the basis of cost of acquisition alone. However, the difficulty with the appraisements at bar is that they do not purport to determine a market value or price as distinguished from a mathematical calculation. It is settled law that export value may not be determined by such a calculation. *United States* v. *Alatary Mica Co.*, 19 CCPA 30, T.D. 44871 (1931) ; *United States* v. *S. Shamash & Sons, Inc.*, 32 Cust. Ct. 665, A.R.D. 41 (1954).

According to the evidence at bar the only Volkswagens in Germany comparable to those at bar as of the time of exportation were the Volkswagens controlled by the manufacturer for distribution in the American market either through the American distributor, Volkswagen of America, Inc., or through American tourists. And the evidence is uncontroverted that the regular channels for distribution

of Volkswagens for exportation to the United States were controlled, and would not, therefore, support a finding of export value in accordance with statutory requirements. Moreover, apart from the matter of controls, it is to be noted that the vehicles under the control of the Volkswagen franchise for exportation to the United States as aforesaid were "new" vehicles by any standard. This fact is significant in relation to the appraising officer's classification of the imported Americanized Volkswagens as "second hand" vehicles. The mere appellation "used" or "second hand", standing by itself, is meaningless for statutory value purposes. The appraisement of a "used" article predicated upon export value when imported into the United States, to be upheld by the courts, must find support in the existence abroad of a market for such article as a "used" article. See *United States* v. *E. R. Squibb & Sons, et al.*, 42 CCPA 23, C.A.D. 564 (1954), and *Ideal Toy Corporation* v. *United States*, 58 Cust. Ct. 590, R.D. 11260 (1967). As such, an appraising officer could not properly make an advisory classification of an imported article as a "used" article apart from the existence of a foreign based market (in the case of statutory export value) dealing in that article in such "used" condition. And since in the instant case the comparative vehicles for export value purposes were "new," the concept of "second hand" vehicles in connection with the appraisement of the merchandise at bar under statutory export value is, in our opinion, misplaced. Consequently, appellant's argument is well taken and fully supports the conclusion that there is no export value for the imported merchandise. By reason of this conclusion it becomes unnecessary for us to discuss or consider the other points advanced under the category of export value.

On the matter of United States value appellant argues that the evidence shows that restrictions and territorial controls exist from manufacturer, distributor, and importer down through dealers who sell only to consumers or users. In this connection, appellee argues that appellant failed to establish that controls or restrictions existed at the dealer's level with respect to sales of the subject Volkswagens in the United States, concluding therefrom that appellant has failed to establish that the involved Volkswagens were not freely offered for sale in the principal market of the United States in the usual wholesale quantities and *in the ordinary course of trade.*

Insofar as United States value is concerned there are no presumptions for appellant to overcome in view of the fact that appraisement herein was predicated upon export value. *United States* v. *F. C. Gerlach & Co. et al.*, 7 Cust. Ct. 494, 503, Reap. Dec. 5443 (1941); *United States* v. *E. R. Squibb & Sons, et al., supra,* at page 27. But appellant does have a burden to establish that United States value

cannot be satisfactorily determined before it can undertake to establish a cost of production value for imported merchandise. 19 U.S.C.A., section 1402(a)(3). And a United States value may be found to exist for imported merchandise on a secondary if not on a primary level if the conditions of the statute are met on the secondary level. *Samuel Shapiro & Company, Inc., a/c The Sharpe & Hart Associates, Inc.* v. *United States,* 51 CCPA 89, C.A.D. 842 (1964).

We have reviewed at length the testimony of the witnesses Losch and Westburg bearing on the matter of United States value. In brief, Losch testified, among other things, that he sold the involved Volkswagens in the United States only to selected dealers in certain territories who numbered between 30 and 50 and did not sell to individuals, and that other importers of such Volkswagens who numbered about 15 or more in 1963 sold them in the States the same way as he did. Westburg corroborated Losch's testimony relative to practices in West Germany in the acquisition of Volkswagens from the franchised dealers and also testified concerning the general sales patterns and marketing practices for new cars in the United States in the movement of such cars from factory to distributor to franchised dealers under the control of the manufacturer. We are of the opinion that the testimony elicited from these witnesses is incisive, informative and evidentiary in character and does not consist of statements of ultimate issuable facts. *United States* v. *North American Asbestos Corp.,* 48 CCPA 153, C.A.D. 783 (1961). And such testimony, standing unrefuted, is sufficient in our opinion to negate the existence of a United States value for the imported merchandise on the primary level. If appellee was desirous of controverting anything these witnesses testified to it had opportunity to conduct a more vigorous cross-examination of them to that end, if it was so advised, or to introduce some affirmative evidence in the record in rebuttal. Since the testimony was not controverted in any manner we see no need for appellant to have to present additional corroborative evidence to lend credence to the testimony of these witnesses. *Kobe Import Co.* v. *United States,* 43 CCPA 136, C.A.D. 620 (1956).

No evidentiary showing has been made with respect to practices at the secondary level, that is, with respect to resales by the dealers in the United States to whom appellant and others sell the Volkswagens acquired and imported outside of the franchise. But on the basis of the instant record no such showing need be made in order to eliminate United States value as a basis for appraising the merchandise at bar, because offers and sales of Volkswagens such as those here involved are "fugitive" at any level and not in the ordinary course of trade. It is clear from the testimony of the witness Losch as well as from the

statements in exhibits 1 and 2 that at the time of exportation of the involved merchandise from West Germany it was the intention of the manufacturer, Volkswagen Werke, of Wolfsburg, Germany, to retain absolute control in the home market and in the United States of the distribution of its output down to the consumer. Exhibits 1 and 2 give evidence of such control insofar as the home market is concerned; and while the trial court was critical of these exhibits on other grounds, they are without question pertinent as to what is the ordinary course of trade. *United States* v. *Rodier, Inc.*, 23 CCPA 336, 340, T.D. 48196 (1936). And as regards the manufacturer's intentions in the domestic markets the witness Losch testified on cross-examination (R. 67–68):

> Q. When you sell these cars in the United States, do you offer the Volkswagen factory warranty on these?—A. No.

> Q. Why not?—A. Because we can't get them. No dealer whoever he sells it to, the exporter, will give a factory warranty book. The warranty book is only valid if it is stamped in it and they will find out which one of the dealers—they will find out who it is and they would fine him or write a letter threatening him to take away the dealership. There are no dealers if you ask me, there are no dealers; they are better employees.

> *          *          *          *          *          *          *

> Q. Then the cars which are the subject of this case are not offered with the Volkswagen factory warranty?—A. Yes.

Hence, the diversion of the manufacturer's output of Volkswagens by appellant and others in the same kind of business and the subsequent modification and importation of these vehicles into the United States and sale of these vehicles here under such circumstances as deprives the users of such a valuable commodity as a manufacturer's warranty, to the extent that the practice succeeds, represent the frustration of the manufacturer's intentions with respect to its own product. Such transactions are "fugitive," and cannot, therefore, be deemed to be in the ordinary course of trade. *United States* v. *Nelson Bead Co.*, 42 CCPA 175, 177, C.A.D. 590 (1955).

Moreover, the courts at least recognize the right of a manufacturer of imported merchandise to determine or influence the ordinary course of trade with respect to its own product. *Goodyear Tire & Rubber Co.* v. *United States*, 11 Ct. Cust. Appls. 351, 354, T.D. 39158 (1922). And in this case all of the witnesses have testified that the Volkswagen as an automobile is in a class by itself—a unique vehicle. Consequently, the practices of Volkswagen Werke, the manufacturer of this vehicle, determine the ordinary course of trade for appraisement purposes insofar as the Volkswagen is concerned. And this would be true not only with regard to appraisements under the United States value basis, but for determinations under the export value basis as well. It seems

rather incongruous that the New York appraiser, once he found the styles 113 and 117 of the model 1200 Volkswagens as imported by dealers outside of the franchise not to be *significantly different* from the counterpart models imported within the franchise, as the record shows, would, after appraising the extra-franchise vehicles under a statutory value basis predicated upon market value or price (i.e., export value), thereafter proceed to appraise the franchise vehicles under the residual value basis (cost of production), unless it was apparent to him at the time of appraising the franchise vehicles that transactions involving the extra-franchise vehicles were not in the ordinary course of trade. For if he thought otherwise he would have been obliged to appraise all of such vehicles, whether within or without the franchise, under the export value basis, in view of the statutory priorities. The fact that he did not do so here is indicative that transactions outside of the franchise with respect to these Volkswagens were not considered to be in the ordinary course of trade. And in either case the manufacturer's practice has been shown here to be one of strict controls.

It, therefore, follows from the foregoing that we find ourselves in disagreement with appellee that a United States value for the involved merchandise exists by default in proof, as the result of our views on the matter of the *ordinary course of trade*. For the reason stated we are of the opinion that the evidence negatives the existence of a United States value for the involved merchandise, and that the proper basis for appraising said merchandise is cost of production.

As to cost of production appellant argues for (1) the admissibility of a document (plaintiff's exhibit 3) which the testimony of Examiner Saul shows was relied upon by appraising officers in the United States in appraising Volkswagens imported into this country through the franchise, and (2) for the legal sufficiency of such document to fulfill the statutory requirements for a cost of production appraisement. The trial court first admitted the document into evidence as plaintiff's exhibit 3 over objection of appellee's counsel and over the objection of attorney Joseph F. Donohue, a member of the bar of this court, appearing of counsel to Sharretts, Paley & Carter, the attorneys for Volkswagen of America, Inc., and then, in its decision, rejected the document as being legally insufficient. Appellee defends the action taken by the trial court as to exhibit 3, contending that exhibit 3 was improperly admitted because it was irrelevant, immaterial, and hearsay, and contends further that exhibit 3 could not establish a cost of production value for the imported merchandise because it reflects production for the American market whereas the imported Volkswagens are a product of the diversion from the home market and modification by an agency

other than the manufacturer prior to importation, that there is no evidence that the figures contained in exhibit 3 are accurate, and that the figures in exhibit 3 do not comply with the statutory requirement of separate enumeration of elements comprising a cost of production appraisement, being stated merely as total cost of production amounts.

Exhibit 3 is a schedule of cost of production values for various models of vehicles manufactured by Volkswagen Werke for exportation. Heading the schedule is a statement which reads:

### Volkswagen Autos

Cost of Production information received from the manufacturer covering the second half of 1962 results in the values below to be used for appraisements of shipments exported from February 1, 1963 to July 31, 1963.

Following this statement the exhibit sets forth figures for 51 vehicles, including figures for the involved styles 113 and 117. The cost of production figure listed in the schedule for style 113 (DeLuxe Sedan) is DM3,344; and the cost of production figure listed in the schedule for style 117 (DeLuxe Sunroof Sedan) is DM3,429.65. Examiner Saul, called as a witness for both parties with respect to exhibit 3, testified that he obtained the figures contained in exhibit 3 from counsel for Volkswagen of America, Inc. (presumably Mr. Donohue who acknowledged in open court that he sent the information contained in exhibit 3 to Examiner Saul in a letter in which, among other things, it was represented that the information had been obtained from the manufacturer), that he circulated exhibit 3 or sheets like it through the Customs Information Exchange to appraising officers throughout the country for purposes of appraising commercial shipments of Volkswagens, that he did not verify the information contained in exhibit 3 by an inspection of the factory's books because it was reputed to have come from the manufacturer, and that it is customary for appraising officers to accept and act upon statements, correspondence and figures received from importers, exporters and manufacturers which are not under oath unless such information differs from other information which they receive.

The witness also testified that Volkswagen Corporation of America, Inc. and individual tourists imported the model 1200 Volkswagen, that he has appraised such importations on the basis of cost of production, that the differences between such importations and the style 113 shown on an invoice at bar are very small, involving speedometer fittings and fender drilling for mounting bumper and supports, that exhibit 3 has been used in 1963 in the appraisement of tourist-imported

Volkswagens, and that exhibit 3 has been used only for the appraisement of Volkswagens which have been made in the American models for the United States.

In our opinion exhibit 3 was properly admitted into evidence. We are not impressed with appellee's contention that exhibit 3 is inadmissible because it is founded on hearsay. If exhibit 3 was a document which appellant was seeking to have the appraiser use as a yardstick in making appraisals and he resisted on the grounds of hearsay, we would hear him loud and clear. But it is a document, which by the appraiser's own admission, he has used as a yardstick in appraising all other Volkswagens coming into the country (new and used or secondhand), except those Americanized in the free trade zone and then shipped to the United States. Thus all of the reasons for applying the hearsay rule seem to have been waived or ignored by the appraiser. Much of what a customs examiner learns regarding imported merchandise in the discharge of his official duties is necessarily acquired from secondary sources. If such sources of information are authoritative and reliable the evidence predicated thereon should be received and considered notwithstanding its technically hearsay nature. *United States* v. *American Express Co.*, 44 Cust. Ct. 779, A.R.D. 120 (1960); *Transcontinental Petroleum Co.* v. *Interocean Oil Co.*, 262 Fed. 278 (1919). In the instant case the information on which exhibit 3 is based has its genesis in the manufacturer, and was supplied by a person who, in his relationship to the examiner was an agent of the manufacturer, and who, in his relationship to this court is an officer of the court. It has not been contended either by Mr. Donohue, the bearer of the information in question, or by appellee's counsel that the information contained in exhibit 3 is false or inaccurate.

We are also of the opinion that exhibit 3 has probative value and should have been considered by the trial court. This is not a case where value evidence sought to be used by a party is or addresses itself to a determination by a reappraising court involving a particular prior importation, as the trial court's opinion infers *vis-a-vis* the presumption of correctness. On the contrary, exhibit 3 addresses itself to and involves a general course of conduct on the part of customs appraising officers at the port of New York respecting the valuation of previously imported merchandise claimed by the offering party to be such as or similar to the merchandise presently before the court. The value status of previously imported merchandise of another importer said to be like or similar to merchandise the value of which is in issue is competent evidence in a reappraisement proceeding. *Sears, Roebuck & Co., et al.* v. *United States*, 30 CCPA 10, C.A.D. 207 (1942), *reversing and remanding United States* v. *Sears, Roebuck & Co. et al.*, 6 Cust. Ct.

961, Reap. Dec. 5268. And the testimony of an appraising officer who is privy to the fixation of the value status of such previously imported merchandise is competent evidence as to an admission against the interest of the Government where the veracity of the witness is vouched for by both parties. *Cf. North American Food Distributing Co.* v. *United States*, 33 Cust. Ct. 438, Abs. 58529 (1954).

In our evaluation of such evidence as well as all the other evidence in this record *vis-a-vis* the statutory cost of production formula we are compelled to conclude that appellant-exporter is not the manufacturer or producer of the imported vehicles at bar within the contemplation of the language of that formula which reads "such or similar merchandise, at a time * * * which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business."

The record, including the testimony of Examiner Saul, substantiates the fact that the imported automobiles are either *such* as or *similar* to those produced by Volkswagen Werke. Here we have Volkswagens which were without question produced by Volkswagen Werke and then *modified* by the exporter. The modification results in the imported vehicles being considered Americanized Volkswagens. At best the exporter can only be considered the manufacturer or producer to the extent of the modification—the actual manufacturer or producer of the basic article being Volkswagen Werke. And it is not the ordinary course of business for the exporter herein to manufacture or produce Americanized Volkswagens. This is the sole province of Volkswagen Werke. It should be borne in mind that the vehicle we are dealing with here is not another article, but is the same type of article which is designated as an Americanized Volkswagen produced by Volkswagen Werke—the manufacturer or producer who designed the standard copied by the exporter in the modification process. Such differences as do exist between the two versions of Americanized Volkswagens are considered by the witnesses as being minimal. And neither the court below nor the appellee here have taken any issue with these differences. Consequently, since the Americanized Volkswagens as produced by Volkswagen Werke are appraised on the basis of cost of production at the figures set forth in exhibit 3 we see no reason why the imported Americanized Volkswagens at bar should not also be appraised in like manner—the imported vehicles being, under the circumstances disclosed in this record, at best *such as* or at least *similar* to the German manufacturer's version of Americanized Volkswagens.

Also, it is of no importance on the matter of cost of production that the involved merchandise was not "manufactured" by Volkswagen Werke in the condition in which it was exported to the United States.

Statutory cost of production contemplates collateral cost evidence in three of its four phases. This fact would permit the introduction of evidence of the cost experiences of agencies other than the manufacturer of the merchandise in question. So, even if we assume for the purposes of this case that appellant is the "manufacturer" of the involved Volkswagens, the cost experiences of the genuine manufacturer of such vehicles normally would be competent evidence under the statute. The purpose of the cost of production statute is not to ascertain the manufacturer's actual costs, but rather to ascertain the actual cost of manufacture. *Ford Motor Company* v. *United States*, 29 Cust. Ct. 553, 557, A.R.D. 9 (1952). *Accord, Charles Stockheimer et al.* v. *United States*, 44 CCPA 92, C.A.D. 642 (1957). And the cost experiences of Volkswagen Werke relative to the production of the model types here involved are consistent with this purpose. In fact, considering the nature of how the vehicles before the court are made up and that they are at best a simulation of the real thing, the cost experiences behind such vehicles might not be acceptable because they would not be truly representative.

With respect to appellee's argument that appellant's cost of production proof does not reflect an item by item breakdown in accordance with the statutory requirement, it is true, of course, that the sum which is said to be representative of statutory cost of production must be the product of the elements set forth in the statute. However, we do not take this to mean that a party relying on cost of production in reappraisement proceedings must be the architect of the establishment of these elements in court irrespective of whether these elements have been otherwise authoritatively established elsewhere in the context in which such party seeks to use them. The figures relied upon by appellant have in fact, we are satisfied, been utilized by appraising officers at least at the port of New York during the year 1963 in returning cost of production appraisements on Volkswagens similar to those at bar. In so doing, such appraising officers necessarily had to address themselves to these statutory requirements. To presume otherwise is to charge them with ignoring or violating the law governing the performance of their duties. This we are not prepared to do. Customs officers are presumed to perform their duties in the manner required by law. *United States* v. *Frank & Lambert*, 2 Ct. Cust. Appls. 239, 242, T.D. 31973 (1911). Consequently, it is proper to conclude that the appraising officers at the port of New York in accepting the figures in dispute and relying thereon in appraising Volkswagens entered at that port during 1963 were satisfied that the statutory elements comprising cost of production were present in those figures. *Cf. Ziade* v. *United States*, 14 Ct. Cust. Appls. 47, T.D. 41551 (1926). And in

tendering such proof here we think appellant met its burden of proof, and has established *prima facie* a cost of production value for the Volkswagens involved in this case. Accordingly, we conclude that assignments of error numbered 1, 3, 4, 7 and 8 have been sustained, and we find as facts:

1. That the merchandise herein consists of Volkswagen automobiles which were exported from Hamburg, Germany in 1963 by appellant, and which were appraised upon entry at the port of Newark, N.J., on the basis of export value as defined in 19 U.S.C.A., section 1402(d) (section 402a(d), Tariff Act of 1930, as renumbered by the Customs Simplification Act of 1956) at invoice prices plus the cost of "Americanization" of each vehicle prior to exportation.

2. That said merchandise is identified on the Final List promulgated by the Secretary of the Treasury in T.D. 54521, and is similar to Volkswagens manufactured by Volkswagen Werke of Wolfsburg, Germany, in the styles numbered 113 and 117 of model 1200 for the American market.

3. That at the times of exportation of said merchandise neither such nor similar merchandise was freely offered for sale to all purchasers in West Germany for home consumption or for exportation to the United States, or in the United States for domestic consumption.

4. That at the times of exportation of said merchandise the cost of production of merchandise such as or similar to said merchandise was DM3344 for style 113 of model 1200 Volkswagen and DM3429.65 for style 117 of model 1200 Volkswagen.

We conclude as matters of law:

1. That there are no foreign, export or United States values for said merchandise.

2. That cost of production as defined in 19 U.S.C.A., section 1402(f) (section 402a(f), Tariff Act of 1930, as renumbered by the Customs Simplification Act of 1956) is the proper basis for determination of the values of said merchandise.

3. That such cost of production values are DM3344 for the style 113 of model 1200 Volkswagens and DM3429.65 for the style 117 of model 1200 Volkswagens.

The judgment of the court below is reversed.

### DISSENTING OPINION

LANDIS, Judge: I must dissent from the majority decision holding cost of production to be the proper basis of valuation of the instant merchandise and reversing the decision and judgment of the trial judge sitting in reappraisement in *F & D Trading Corp.* v. *United*

*States*, 59 Cust. Ct. 666, R.D. 11360 (1967), which held export value as returned by the appraiser to be the proper dutiable value of Volkswagen automobiles imported from West Germany.

In my view appellant-importer who claims here that the automobiles should be appraised under the cost of production basis of appraisement cannot prevail, as the trial judge properly held in a well reasoned decision: (1) that the appellant-importer has not offered sufficient proof to overcome the presumption of correctness attaching to the appraiser's valuation,

(2) that sufficient proof has not been offered to negate United States value, and

(3) that sufficient evidence has not been offered to establish the cost of production basis of valuation claimed by appellant.