60 CCPA

**The UNITED STATES, Appellant,**

v.

**F & D TRADING CORP., Appellee.**

**No. 5407.**

United States Court of Customs
and Patent Appeals.

March 1, 1973.

678

Harlington Wood, Jr., Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Bernard J. Babb, New York City, for the United States.

Rode & Qualey, New York City, attorneys of record, for appellee. Ellsworth F. Qualey, New York City, of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

LANE, Judge.

This appeal is from the decision and judgment of the Customs Court, Third Division, Appellate Term, 64 Cust.Ct. 810, A.R.D. 268 (1970), wherein a majority of the Appellate Term reversed the decision and judgment of a single judge sitting in reappraisement, 59 Cust.Ct. 666, 273 F.Supp. 431, R.D. 11360 (1967). We affirm the judgment of the Appellate Term.

The merchandise in issue consists of eight Volkswagen automobiles which were exported from West Germany in 1963. Automobiles, being on the Final List of the Secretary of the Treasury, T.D. 54521, are subject to appraisement under section 402(a) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165. The present automobiles were appraised on the basis of export value (section 402a(d)) while the importer-appellee claims the proper basis is cost of production (402a(f)). By the provisions of section 402a(a), the value of merchandise is determined on the basis of cost of production only if export value, foreign value and United States value cannot be satisfactorily ascertained.

Paragraphs of section 402a which are particularly involved here read:

(d) *Export value*—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(e) *United States value*—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

(f) *Cost of production*—For the purpose of this subtitle the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum

of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The record consists of affidavits of Thure Dommenget and Rudolf Raab, testimony of Erwin Losch, James Westburg and Bertram Saul, and accompanying affidavits. Dommenget and Raab were dealers who sold Volkswagens outside the franchise of the manufacturer, Volkswagen Werke, in West Germany. Losch was a buyer and seller of Volkswagens for appellee and Westburg was another buyer and exporter of Volkswagens outside the manufacturer's franchise. Saul was the customs examiner in charge of appraisement and classification of automobiles and spare parts at the port of New York.

The evidence indicates that the Volkswagens at bar were purchased in West Germany from dealers or "exporters" who acquired them either from dealers franchised by the manufacturer, Volkswagen Werke, or from private individuals. Appellee paid these "exporters" for the automobiles in cash and accepted delivery in the free trade zone of Hamburg. Delivery was made there so that the "exporters" would receive a rebate the West German government made on exported merchandise. Since the automobiles had not been manufactured for exportation to the United States and thus did not meet all American standards, appellee had them "Americanized" at its expense in Hamburg. That process included installing safety glass windshields, leather seats, mileage speedometers, sealed beam headlight housings, white directional lights and bumpers, as needed. These imported Volkswagens lacked the manufacturer's warranty because those franchised dealers who sold

them were unwilling to expose their identity and risk the possibility of Volkswagen Werke taking punitive measures against them. About 4,000 Volkswagens in 1962, and about 5,000 in 1963, were purchased and exported to the United States by appellee in this manner. At that time there were about 15 West German "exporters" selling Volkswagens to appellee and other American importers.

Upon importation, these Volkswagens were appraised at statutory export value, that value being determined by adding to the price appellee paid for each vehicle the amount it spent to Americanize it. The witness Saul testified that customs considered the vehicles used rather than new because they had left the regular distribution channels by which Volkswagen Werke distributed vehicles in the United States. In response to a subpoena *duces tecum*, he produced a so-called cost of production sheet, Exhibit 3, which he had circulated to appraising officers of the Customs Bureau throughout the country for the purpose of showing the value, based on cost of production, § 402a(f) supra, at which to appraise Volkswagens imported through channels of Volkswagen Werke and by tourists from February 1, 1963 to July 31, 1963.

In denying appellee's appeal for reappraisement at cost of production, the trial court held that it had failed to "negative the existence of export value," which "is alone sufficient to preclude it from prevailing in this case." The court further held that appellee had neither "negatived" the existence of statutory United States value nor established a value predicated on statutory cost of production.

A majority of the Appellate Term disagreed on all points. It found the evidence to show that there was no statutory export value or United States value, that the absence of foreign value was "virtually conceded," and that statutory cost of production had been proved. Hence it found statutory cost of production to be the proper basis for appraisement. Except that it does not claim

that there is any statutory foreign value, appellant disputes each of those findings of the majority of the Appellate Term.

By statute, the jurisdiction of this court in reappraisement cases is limited to a review of the judgment below on matters of law, which include the question whether that judgment is supported by substantial evidence in the record. United States v. E. R. Squibb & Sons, 42 CCPA 23, 26, C.A.D. 564 (1954).

Under that standard, the finding of the majority of the Appellate Term as to export value must be sustained. The majority observed that the value of merchandise for reappraisement purposes must be determined in accordance with its condition at the time of exportation. It then stated:

[T]he difficulty with the appraisements at bar is that they do not purport to determine a market value or price as distinguished from a mathematical calculation. It is settled law that export value may not be determined by such a calculation. United States v. Alatary Mica Co., 19 CCPA 30, T.D. 44871 (1931); United States v. S. Shamash & Sons, Inc., 32 Cust. Ct. 665, A.R.D. 41 (1954).

We agree that the appraisements here do not comply with the statutory provisions for export value. The value found was not, in terms of section 402a(d), "a market value or * * * price" at which merchandise such as or similar to the *Americanized Volkswagens imported here* were "freely offered for sale," to all purchasers in the principal markets of West Germany "in the ordinary course of trade." Contrary to the import of appellant's arguments, use of the term "market value" in the statute does not avoid the necessity of basing export value on an amount at which the merchandise is "freely offered for sale." Muser v. Magone, 155 U.S. 240, 15 S.Ct. 77, 39 L.Ed. 135 (1894), cited by appellant, is not authority to the contrary. The appraisement upheld there

was made under a statute including a provision for appraisers, "by all reasonable ways and means, * * * to ascertain, estimate, and appraise the true and actual market value and wholesale price * * * of merchandise * * *." * The statute did not include an express requirement that the appraised value be based on an amount at which the merchandise was "freely offered for sale."

The Appellate Term considered the evidence to show the only Volkswagens comparable to the Americanized grey market Volkswagens as imported here to be the Volkswagens controlled by the manufacturer for distribution in the American market either through its American distributor or through American tourists. It correctly noted that the evidence was uncontroverted that the regular channels for such distribution were controlled and would not support a finding of export value under the statute. Losch testified that purchasers of grey market Volkswagens for export to the United States other than appellee all operated in substantially the same way as appellee. That testimony, along with testimony of Westburg and statements of the affiant Raab that tend to confirm it, provides substantial evidence to support the finding that the other Americanized Volkswagens imported, like the eight at bar, were not offered for sale in West Germany in the condition in which they were exported. Hence the Appellate Term did not err in finding that the existence of an export value under the statute had been negated.

On the question of United States value, appellee faces no adverse presumption. The Appellate Term noted that it was the intention of the West German manufacturer to retain absolute control in the United States, as well as in the home market, of the distribution of its output down to the consumer. It further noted that the Americanized, or grey market, Volkswagens represented a diversion of vehicles manufactured for German consumption and that they

* 155 U.S. at 244, 15 S.Ct. at 79.

lacked the conventional manufacturer's warranty. The Appellate Term stated:

It seems rather incongruous that the New York appraiser, once he found the styles 113 and 117 of the model 1200 Volkswagens as imported by dealers outside of the franchise not to be *significantly different* from the counterpart models imported within the franchise, as the record shows, would, after appraising the extra-franchise vehicles under a statutory value basis predicated upon market value or price (i. e., export value), thereafter proceed to appraise the franchise vehicles under the residual value basis (cost of production), unless it was apparent to him at the time of appraising the franchise vehicles that transactions involving the extra-franchise vehicles were not in the ordinary course of trade. For if he thought otherwise he would have been obliged to appraise all of such vehicles, whether within or without the franchise, under the export value basis, in view of the statutory priorities. The fact that he did not do so here is indicative that transactions outside of the franchise with respect to these Volkswagens were not considered to be in the ordinary course of trade. And in either case the manufacturer's practice has been shown here to be one of strict controls.

It, therefore, follows from the foregoing that we find ourselves in disagreement with [the Government] that a United States value for the involved merchandise exists by default in proof, as the result of our views on the matter of the *ordinary course of trade*. For the reason stated we are of the opinion that the evidence negatives the existence of a United States value for the involved merchandise, and that the proper basis for appraising said merchandise is cost of production.

As to cost of production, the Appellate Term held, contrary to the trial court, that Exhibit 3, the schedule of cost of production values used for Volkswagens imported into the United States through the manufacturer's channels, was admissible in evidence. Regarding those Volkswagens as either "such or similar" merchandise under section 402a(f), the Appellate Term found that appellee had established prima facie a cost of production value for the Volkswagens in this case equal to the value set forth in Exhibit 3 for corresponding models.

■ We agree with the Appellate Term's conclusions as to United States value and cost of production. Those views are predicated on the premise that the Volkswagens imported through the manufacturer's channels are "such or similar merchandise," under both statutory provisions, with respect to the Americanized Volkswagens imported by appellee. That premise finds overwhelming support in the evidence. The evidence is uncontradicted that the grey market and regular channel Volkswagens were nearly identical with the differences, extremely minor, residing in the holes drilled in the fenders, use of amber or red portions in the tail lights and variations in speedometer fittings.

■ Saul revealed that the reason Customs appraised the present vehicles differently was that they were considered second hand because they had left the usual distribution channels. That position is unsound for several reasons. First, there is uncontroverted evidence that appellee's Volkswagens were not previously used by a consumer and that they were "new" by accepted standards. Second, Saul testified that Customs also applied the Exhibit 3 values to Volkswagens imported by tourists, which in some cases at least were certainly used abroad prior to importation. In addition, there is no evidence to support a conclusion that Volkswagens substantially the same as those imported directly from the manufacturer became other than "such or similar" merchandise simply by reason of some previous use.

■ As to accepting Exhibit 3 in evidence, the Appellate Term clearly did not err. The testimony of Saul definite-

ly establishes its authenticity and probative value as setting forth cost of production values that Customs applied to such or similar merchandise during the time period pertinent under the statute. This exhibit, along with the evidence of its use, gives rise to the presumptions that there was no statutory United States value for the imported Volkswagens and that the values set forth therein represented the true cost of production under the statute, that is, the sum of the individual items that section 402a(f) decrees shall make up cost of production. To reject those values because a breakdown is not provided, as appellant asks, would be unreasonable under the circumstances and merely thwart the obvious intent of the statute to appraise at the true value.

For the reasons stated, appraisement of the imported Volkswagens at the cost of production values found by the Customs Court, Third Division, Appellate Term is correct, and its judgment is *affirmed*.

Affirmed.